The State v. Cantlin.

---

THE STATE v. CANTLIN et al. Appellants.

Division Two, November 21, 1893.

1. **Criminal Practice:** PROVINCE OF JURY. The supreme court cannot usurp the province of the triers of facts in reviewing the evidence in a criminal case.

2. ———: INSTRUCTIONS: EXCEPTIONS: MOTION FOR NEW TRIAL. The failure of the trial court to give all proper and needful instructions should be excepted to at the time such failure occurs, and the error should be further called to the attention of the court in the motion for a new trial.

3. ———: ———: "FELONIOUSLY." It is unnecessary to define the meaning of the term *feloniously* when used in an instruction given on a criminal trial.

4. **Newly Discovered Evidence:** NEW TRIAL. The failure of defendant to elicit from one of his witnesses all the facts within her knowledge can only be attributed to lack of diligence, and newly discovered evidence obtained from her will not afford a sufficient ground for a new trial.

The State v. Cantlin.

*Appeal from St. Louis Criminal Court.*—HON. HENRY L.
EDMUNDS, Judge.

AFFIRMED.

ROBBERY in the first degree is the charge in the
indictment, on which charge the defendants were con-
victed and their punishment assessed at five years
imprisonment in the penitentiary.

The charging portion of the indictment is this:
"That Louis Hendricks, John Cantlin, Richard Cant-
lin, William Shadwick and Thomas Mooney, late of
the city of St. Louis aforesaid, and state aforesaid,
on the ninth day of October, in the year of
our Lord one thousand eight hundred and ninety-
two, at the city of St. Louis aforesaid, with
force and arms in and upon one, John Dougherty,
feloniously did make an assault; and the said John
Dougherty in fear of immediate injury to his person,
then and there feloniously did put, and by force and
violence to his person, $47, lawful money of the United
States of the value of $47, all of the goods and prop-
erty of the said John Dougherty, from the person and
against the will of the said John Dougherty, then and
there with force and violence as aforesaid, feloniously
and violently did rob, steal, take and carry away."

The testimony of Dougherty is to the effect that:
The prosecuting witness was by trade a steam and gas-
fitter, but had for several years worked as a common
laborer; had a wife and ten children, whom he had left
in New Orleans until he was able to send for them; he
had saved enough money from his earnings to send for
them, and had $47 besides, and they were on their way
to St. Louis on a steamer to join him when the alleged
offense was committed; he was boarding meanwhile in
a cheap lodging house kept by one Mrs. Farrington,

where he paid $1 per week for his room. Appellants all lodged in the same house on the floor above Dougherty, and paid ten cents per night for their accommodation. The two Cantlins and Shadwick roomed together. The money above mentioned consisted of one new ten-dollar bill, five five-dollar bills, and six one-dollar bills, and was carried by Dougherty on his person in a small tobacco bag in his inside vest pocket.

On the afternoon of October 9, 1892 (a Sunday), about half past three o'clock, Dougherty went to a water-closet on the second floor of this lodging house, and while there took out the bag and the money, and was counting it over, the door being slightly ajar at the time, when appellant Mooney appeared at the door and, looking at him, remarked, "Quite a nice roll you have there." Dougherty answered, "Only a few pennies I have been saving up;" and immediately returned the money to his vest pocket. He was "somewhat surprised and alarmed" at being thus seen by Mooney, as he did not want any of his fellow lodgers to know that he had the money. Mooney walked away, and soon after Dougherty came from the closet into the hall. As he was walking toward his room, appellants John and Richard Cantlin seized him around the neck and shoulders, appellant Shadwick caught him by the legs, and appellant Mooney struck him with either a banister or bed slat. He was thus thrown and beaten down. Mooney thrust his hand into the vest pocket and took therefrom the little bag and money, and Dougherty became unconscious. On reviving, he found himself in the dining room with Mrs. Farrington and a Mr. Clark; he was bleeding profusely, and gave the alarm that his money had been taken. In a few minutes police officers came to the house, to whom he made the complaint, and the appellants were taken into custody, all four of them being found in a room on the third floor.

Dougherty acknowledged that on the evening before he had asked two other lodgers on his floor for the loan of a quarter to get his wash from the laundry (but did not get the money); and also that on this same Sunday afternoon he applied to a lady in the house for the same sum for the same purpose (which he did not get), but stated that he did not tell either of the parties that he had no money, and that he had requested the loan as he did not want to break any of his bills.　He denied having been in the room of defendants that afternoon and having a fight there with them, or that he was acquainted with or associated with them, nor drank with them.　And he also said that he did not see or know of his brother-in-law, Conley, having any difficulty with any of defendants at or about the time of the robbery; but he did not deny that Conley was there at that time.　He further stated that after the robbery occurred he quit boarding at Mrs. Farrington's, giving as a reason therefor, that he was afraid of his life among the class of people who boarded there.

Annie Bogans a negro woman, whose social *status* was demonstrated by the marriage license of which she made prompt profert on taking the witness stand, testified in substance and in particular as follows:　That she was not acquainted with Dougherty nor with any of defendants but Louis Hendricks, whom she always knew by the name of "Cincinnati Loui," and who on former occasions had often joined her in a social glass of beer at her house; that on the afternoon in question and about the time already stated, she was proceeding down town with a friend in order for the latter to take a street car, which being done, witness started to return home, and while on the street car tracks in the center of the street, and passing in the rear of Mrs. Farrington's boarding house on the rear or Eighth street side,

she "heard such a scrummishing up stairs" and heard a man halloo "help," "watch," that she looked up and saw in the hall of the second story John and Richard Cantlin and William Shadwick holding Dougherty, while Louis Hendricks and Thomas Mooney were pounding him with clubs, and saw Mooney run his hand into Dougherty's pocket, and take his money out, whereupon witness hallooed to Hendricks and said " 'Cincinnati Loui,' you ought to be ashamed of yourself;" that thereupon a large crowd gathered about the house, and to use the language of the witness "just after Mooney got the money he ran out on the second floor porch on the Eighth street side in front of everybody, and untied a little black bag and took out the money; Mooney then slid down one of the porch posts down into the crowd, and I hit him with a piece of wagon stick that I had in my hand and I said, 'there is the man who has the money,' and Louis Hendricks came out next after Mooney, and they all went back up stairs."

Police officer Callahan testified to arresting a number of men in the house shortly after the alleged robbery and taking them to the police station, where Dougherty identified the defendants as his assailants, and the others were released. Defendants were searched immediately after their arrest, but no money was found on them, nor in the room where they were arrested was money found, though search was made there just after arrests. When arrested, there were some bruises on John Cantlin's face.

On the part of defendants, the testimony showed the following: At about half past 3 o'clock on the afternoon of Sunday, October 9, 1892, appellants with some others, were in the room of the Cantlins on the third floor, drinking beer; after awhile Dougherty, with his brother-in law, one Conley, came to the door. Conley asked Richard Cantlin for his bucket to get

some beer, which was refused.   Conley then knocked Cantlin down.   Dougherty ran into the room, exclaiming: "All hands off! a fair fight!" and advanced on John Cantlin; they began fighting, scuffled out into the the hall, and then Dougherty dragged Cantlin down the stairs to the second floor.   Mooney alone followed to assist Cantlin, the others remaining in the room, securing a loose banister on the way down, and when he reached the lower hall, seeing Dougherty had Cantlin down on the floor, he "knocked Dougherty down and used him rather roughly."   Cantlin also secured a piece of banister and was beating Daugherty with it, when Mrs. Farrington came out of the dining room and separated them, and Mooney and Cantlin returned to their room.   Shadwick and the others had meanwhile separated Richard Cantlin from Conley, who disappeared, and Shadwick and Richard did not leave the room until arrested by the officer.   Defendants all denied taking any money from Dougherty.

Defendants also introduced testimony establishing good character, and showing that Dougherty, in spite of his assertions to the contrary, was well acquainted with all of the defendants except perhaps Hendricks, and frequently was in their rooms laughing and drinking with them.   The testimony of defendants themselves was abundantly supported by that of others who were in the room with them at the time the fight occurred.

Mrs. Farrington testified that she had lain down that afternoon to take a nap, and about half past three heard Dougherty in the Hall calling for help.   She opened the dining room door and saw what she took to be a fight going on in the hall.   Mooney and one of the Cantlins had Dougherty down on the floor and were "pounding him with a club."   She had to push them back to prevent them from hitting him after she entered the hall.   She and a Mr. Clark took Dougherty into

the dining room; he seemed "to be dazed;" she fastened the door securely behind her to prevent Mooney and Cantlin from coming in. After a few minutes Dougherty revived, called for help, and said, "I have been robbed of my money." She had frequently loaned Dougherty small amounts of money (as she did other boarders), which he had always promptly repaid. She also stated that after Dougherty said he was robbed, she went to the water-closet; that no light was burning there that Sunday afternoon, and it was quite dark in there, too dark for one to count money, and that she went into the water-closet on purpose in order to see how light it was. Mrs. Farrington also expressed her confidence that no one could stand where Annie Bogans stood on the Eighth street car tracks, and distinguish anyone in the hall of the second floor of her boarding house, but she does not state that she went down to the tracks in order to see if this were the case. She also stated that she nailed down the north windows on the second floor of the Eighth street side. And she further said that the doors on the second floor rooms were closed that afternoon, and that she was *"sure"* neither Mooney nor any other one of defendants slid down the porch posts that Sunday afternoon, though she does not state why she was "sure." And respecting Dougherty's quitting her boarding house immediately after the alleged robbery occurred, she states that he remained at her house for some three weeks after its alleged occurrence, and until his family came from New Orleans. Such, in brief, is the testimony herein.

At the close of the testimony, the court gave the several instructions as to good character, competency and credibility of witnesses; presumption of innocence and reasonable doubt, and also gave the following instructions:

"2. If you believe and find from the evidence that in the city of St. Louis, and on or about the ninth day of October, the defendants (naming them) assaulted John Dougherty, and from his person and againt his will, by violence to his person, or by putting him in fear of some immediate injury to his person, did feloniously rob, steal, take and carry away the property of John Dougherty, to-wit, $47—if from the evidence you so find, you will convict them of robbery in the first degree; and unless you so find and believe from the evidence, you should acquit them."

"5. The court instructs the jury that every person who is present at the commission of a felony, aiding, abetting, assisting or encouraging the same by words, gestures, looks or signs, is, in law, deemed to be an aider and abettor, and is liable as a principal. But on the other hand, mere presence at the commission of a felony or other wrongful act does not render a person liable as a participator therein; if he is only a spectator, innocent of any unlawful intent, and does not aid, abet, assist or encourage those who are actors, he is not liable, as principal or otherwise. Therefore, if from the evidence you believe and find, beyond a reasonable doubt, that any of the defendants actually assaulted the prosecuting witness, John Dougherty, and by force and violence, or by putting him in fear of some immediate injury to his person, took from him, or from his person, against his will, the property described in the indictment, with the intent at the time to steal, take and carry away such property, and that any of the other defendants were then and there present aiding, abetting and encouraging in any way, or by any means, the same, you should convict such other defendant of the offense of robbery in the first degree; otherwise you should acquit such other defendant.

"6. The jury are instructed that in order to con-

vict all of the defendants in this cause, it is not necessary that the jury should believe that each and all of the defendants actually assaulted or struck the prosecuting witness, John Dougherty, or that they even took hold of him, or even touched his person; but if the jury believe from the evidence, beyond a reasonable doubt, that any of the defendants actually assaulted the said John Dougherty, and by force and violence to his person, or by putting him in fear of immediate injury to his person, took from him, against his will, the property described in the indictment, with the intent then and there to steal, take and carry away the said property, and further find that the other defendants, or any of them, were present, aiding, assisting or encouraging, or for the purpose and with the intent to aid, assist or encourage, if necessary, the defendant or defendants actually making such assault, then the defendant or defendants so doing, or so present for the purpose aforesaid, are equally guilty with the one, or ones, actually making such assault, and the jury should so find."

Defendants asked the following instructions, which were refused:

"1. If the jury find from the evidence that the prosecuting witness, John Dougherty, on the morning of the alleged offense, did not have as much money as twenty-five cents in his possession, or that on the morning of October 9, or on the evening just prior to the day of the alleged offense, he had not sufficient money with which to pay for his laundrying, these facts may be taken into consideration by the jury in determining whether or not he was actually robbed of money, as charged in the indictment.

"2. Though the jury may find that one or more of the defendants, on the occasion of the alleged offense, clubbed the prosecuting witness, John Dougherty, yet,

if they further find and believe from the evidence that no money was forcibly taken from him, as charged in the indictment, they will find the defendants not guilty."

The grounds alleged for a new trial in the separate motions are the same, viz: that the court gave illegal and erroneous instructions; that the court refused proper and legal instructions, and that there is no evidence to support the verdict; and, on the part of Shadwick and Mooney, there was the additional ground suggested of newly discovered evidence.

*T. S. Burnett* for appellants.

*R. F. Walker*, Attorney General, and *C. O. Bishop*, for the state.

(1) The instructions asked by appellants were properly refused. *State v. Gann*, 72 Mo. 374. (2) The motion for a new trial failed to assign as a reason therefor that the court failed to give proper or necessary instructions and it is too late to complain here. *State v. Noeninger*, 108 Mo. 166; *State v. Foster*, 115 Mo. 448. (3) The instructions given by the court fully covered the law of the case. (4) The evidence supports the verdict. No rule is better settled in this state, than where the testimony is sufficient to authorize the trial court in his discretion, to submit to the jury the question of defendants' guilt or innocence, and they have found them guilty, such action will not be reviewed here unless it clearly and affirmatively appears that such discretion has been abused. *State v. Moxley*, 115 Mo. 644; *State v. Orrick*, 106 Mo. 111; *State v. Jackson*, 106 Mo. 181.

SHERWOOD, J.—I.   The defendants are not represented in this court; but in the motion for a new trial

the grounds on which defendants rely have already been set forth in the preceding statement.

One of the grounds of the motion is, that there is no evidence to support the verdict of the jury. The record itself contradicts this assertion; there is evidence to support the verdict. As to whether the jury should have believed the defendants rather than Dougherty, was a question solely for the jury. If the testimony of Dougherty had transcended all bounds of human probability, or if he had stated facts physically impossible, then such a ground as is now urged might be tenable; but this is not the case. And if his testimony was contradicted by several witnesses, or was improbable, still within the bounds before mentioned, we cannot usurp the province of the triers of the facts, as we have again and again decided. *State v. Breeden*, 58 Mo. 507; *State v. Moxley*, 115 Mo. 644; *State v. Orrick*, 106 Mo. 111.

The like line of remarks applies to the testimony of Annie Bogans. And while on this point it may not be improper to observe that in the affidavit made by John Schmidt, the keeper of a grocery store under the Farrington boarding house, and which affidavit was filed in support of the motion for a new trial made by Hendricks, it appears that the affiant at the time the alleged robbery occurred, while in his store heard Dougherty halloo, "murder!" "police!" "help!" and, on looking up at the window on the Eighth street side, and on the second floor, saw Dougherty with his head out of the window, and looking over across the street saw Hendricks walking quietly along; and upon this showing, Hendricks was granted a new trial; and, thereupon, a *nolle pros* was entered as to him. If John Schmidt, in his own store on the ground floor, could see Dougherty with his head out of the second story Eighth street window, it would not seem difficult for Annie Bogans,

standing out in the center of the street, and on the car tracks, to do the same thing. Of course the testimony of Schmidt was not before the jury, but it has a strong tendency to show that the testimony of Annie Bogans was neither impossible, false nor feigned.

II. The instructions given by the court seem fairly to cover the issue joined between the state and the defendants, and if they did not, there is no statement in the motion that the court *failed* to give all proper and needful instructions. So that, if the court did fail to instruct the jury upon all questions of law arising in the case which were necessary for the information of the jury in giving their verdict, exception should have been saved *at the time such failure occurred*, and the point should have been preserved in the motion for a new trial, and this for the reason that exceptions in criminal causes occupy the same footing as do those in civil matters, and can only be preserved by the same methods of procedure. *State v. DeMosse*, 98 Mo. *loc. cit.* 344; *State v. Foster*, 115 Mo. 448.

III. As to the word "feloniously" being used in the second instruction given at the instance of the state without defining the meaning of the term, it suffices to say that, under *State v. Scott*, 109 Mo. 226, such process of definition was unnecessary. Besides, the other instructions given, set out very plainly all the constituent elements of the crime charged, and so there was no opportunity for the jury to be misled.

IV. The instructions asked by defendants seem to be covered by those given; but, if not, it is not requisite that the trial court should single out a certain fact and base instructions on that.

V. On the part of two of the defendants, Shadwick and Mooney, the ground of newly-discovered evidence was suggested in the motion for a new trial and supported by the affidavit of Mrs. Farrington. Her

affidavit, though more full in details, does not differ very materially from her testimony, as already related; but if it did, she was the witness of the defendants, and if they failed to elicit from her all she knew about the case, such failure cannot be attributed to anything but lack of diligence in failing to discover that she knew more than her testimony on the stand indicated. *Cook v. Railroad*, 56 Mo. 380, and cases cited. Judgment affirmed. All concur.