# THE STATE v. JOHN FLEETWOOD, Appellant.

### Division Two, November 23, 1909.

1. **EVIDENCE: No Objection in Motion.** Where defendant's motion for a new trial does not assign as a ground thereof that the trial court erred in excluding evidence offered by him, any complaint of the ruling of the court in excluding testimony cannot be considered on appeal.

2. **CONTINUANCE: Discretion.** Granting or refusing a continuance in a criminal case is a matter that frequently rests in the sound discretion of the trial court, and unless it is apparent that such discretion has been abused the appellate court will not interfere with its rulings.

3. ————: **Reviewable.** Unless the application for a continuance is preserved in the bill of exceptions, the rulings of the trial court thereon are not reviewable on appeal.

4. **CONCUBINAGE: Instruction: Refusing Defendant's.** Where the court has fully defined the elements of concubinage in an instruction given, as the taking away of a female under eighteen years of age for the purpose of prostitution and concubinage, it is not error to refuse one asked by defendant in which the jury are told that sexual intercourse is not concubinage, and that they should acquit him, even though they find he had sexual intercourse with prosecutrix, unless they find that he took her away for the purpose of concubinage.

5. **APPELLATE PRACTICE: Sufficiency of Evidence.** Where there is any substantial evidence to support the verdict in a criminal case, the appellate court will not interfere therewith on the ground of its insufficiency. It is for the jury to settle any conflict in the evidence.

6. **CONCUBINAGE: Sexual Intercourse.** The evidence was undisputed that prosecutrix was under eighteen years of age, that she was in the legal charge of her father, and that she was persuaded and taken away by defendant. The evidence that the taking away was for the purposes of prostitution was that she and defendant remained at the picnic grounds into the night several hours after her family were gone, and at his persuasion; that they walked that night to his house twelve or fifteen miles away; that the house was a one-room one, in which were two beds; that they remained there that day and the succeeding night; that she lay down on one of the beds, with her clothes off, and defendant, with his shoes and coat off, lay down beside

her. He testified he did not have sexual intercourse with her, and she did not testify one way or the other. Defendant was married and had a family, and they were at her father's a mile away. *Held*, sufficient to support a verdict of guilty of concubinage.

Appeal from Douglas Circuit Court.—*Hon. John T. Moore*, Judge.

AFFIRMED.

*Elliott W. Major*, Attorney-General, and *John M. Dawson*, Assistant Attorney-General, for the State.

(1) Sufficiency of information. The information is sufficient, valid, properly verified and in the approved form. R. S. 1899, sec. 1842; State v. Johnson, 115 Mo. 486; State v. Jones, 191 Mo. 655; State v. Kinst, 207 Mo. 18; State v. Beverly, 201 Mo. 550. (2) Granting or refusing an application for continuance is a matter within the judicial discretion of the trial court. State v. Day, 100 Mo. 247; State v. Cochran, 147 Mo. 511; State v. Burns, 148 Mo. 172. To warrant a reversal on the ground of the refusal of a continuance, it must appear from the whole case that the result might have been different had the testimony been given as indicated. State v. Dale, 89 Mo. 579; State v. White, 152 Mo. 159; State v. Kindred, 148 Mo. 281. The materiality of the evidence does not appear in the application; and, furthermore, the absent witness was defendant's wife, whose deposition he could have procured. The application for continuance was frivolous, and the court did not abuse its judicial discretion, or exercise it oppressively, in refusing to continue the cause. State v. Rice, 149 Mo. 465; State v. Dittmer, 124 Mo. 431; State v. Banks, 118 Mo. 117. (3) (a) Exception as to when witness (Wm. Miller, father of the girl) was first informed when the girl had remained at the reunion, and not returned with the Morrisons.

This was competent testimony going to show the want of consent of the father as to her remaining with defendant, and was admissible.  (b)  As to the exception, if witness (father of prosecutrix) consented for the girl to remain at reunion with defendant, this was competent, as the girl was living with and was in charge of her father.  (c)  That witness (father) had attempted to keep the girl away from defendant was also competent under the light of all the evidence that she had become pregnant while staying at defendant's home, and gave birth to a child, and was competent for the further reason that the evidence went to the fact of defendant taking the girl away for the purpose of concubinage.  State v. Stone, 106 Mo. 7.  (d)  Evidence as to whom she had been making her home with, sometime before her baby was born, was proper to show the intent and purpose for which he induced the girl away.  The gravamen of the offense of taking away a female for the purpose of concubinage is the intent with which the enticing and abduction are done. State v. Knost, 207 Mo. 18; State v. Beverly, 201 Mo. 550; Bishop on Statutory Crimes, sec. 636.  The court having fully instructed the jury on the points therein contained, it was not error to refuse this instruction. When the court has already instructed the jury on the matter contained in the instruction asked, it is not error to refuse to instruct the jury on the same matter, even though instructions asked may be correct.  State v. Atchley, 186 Mo. 174; State v. Crittenden, 191 Mo. 17; State v. Barrington, 198 Mo. 23; State v. Speyer, 194 Mo. 459.  And furthermore, the evidence of intercourse, or the fact of intercourse, only goes to prove the intent or purpose for which defendant took the girl away.  State v. Bobbst, 131 Mo. 338; State v. Gibson, 111 Mo. 92; State v. Johnson, 115 Mo. 480.

FOX, J.—This cause is now pending before this court upon an appeal from a judgment of the circuit

court of Douglas county, convicting the defendant, John Fleetwood, of an offense as defined by section 1842, Revised Statutes of 1899, for the taking away of a female under the age of eighteen years, for the purpose of prostitution or concubinage. Omitting formal parts, the information, which was duly verified, charging defendant with this offense, was as follows:.

"Fred Stewart, prosecuting attorney within and for the county of Douglas, in the State of Missouri, informs the court upon his oath that John Fleetwood, on the 10th day of September, 1908, in the county of Douglas and State of Missouri, did then and there being one Myrtle Miller, a female person under the age of eighteen years, to-wit, seventeen years old, unlawfully and feloniously take from one William Miller, her father, he, the said William Miller, then and there being in the legal charge of the person of the said Myrtle Miller, without the consent and against the will of the said William Miller for the purpose of concubinage by having illicit sexual intercourse with him, the said John Fleetwood, against the peace and dignity of the State."

Upon this charge the defendant was duly arraigned and pleaded not guilty at the September term, 1908, of said Douglas County Circuit Court. At said term the trial proceeded and the evidence introduced on the part of the State upon the trial of said cause tended substantially to prove that the prosecutrix was the daughter of William Miller and lived with her father in Christian county, Missouri, about a mile and a half from defendant's home in Douglas county; that on September 12, 1908, there was a reunion being held at Ava, the county seat of Douglas county; that on the morning of September 12th prosecutrix left her home in a conveyance with Mat Morrison (who had married a sister of prosecutrix) and his family to go to Ava, to attend the reunion, under the direction and with the consent of her father; that they arrived at

the grounds where the reunion was held at about 10
o'clock a.m., and that immediately after arriving at
the reunion grounds the defendant and prosecutrix
met and remained together all day; that defendant
induced and over-persuaded the prosecutrix to remain
with him at the reunion and accompany him home, and
not to return to her own home with the Morrisons
when they were ready to start home from the reunion;
that Mat Morrison and Mamie Morrison, his daughter,
left prosecutrix and defendant together on the reunion
grounds; that when Mamie Morrison, at least three
different times asked prosecutrix to return home, the
defendant at each and all times coaxed, induced and
over-persuaded the prosecutrix to stay wih him at the
reunion grounds, without the consent of the Morrisons,
in whose charge prosecutrix had been placed by her
father.    The State's evidence also shows that prose-
cutrix was only seventeen years of age at the time;
that her father never consented to her going or being
with the defendant, but on the contrary would not
permit prosecutrix to visit the home of defendant,
and had not permitted defendant and prosecutrix to be
together for two years prior to this time; that some-
time previous to this time the prosecutrix had been
staying at the home of defendant, that is to say, about
two years previous, and became pregnant and gave
birth to a child; that since the occurrence of that event
the father of prosecutrix had never allowed her to
be in defendant's company or visit defendant's home.
Prosecutrix testified that she lived with her father
and that she went to the reunion at Ava with her
brother-in-law, Mat Morrison, and his family, and at
the reunion defendant asked her to stay with him at
the reunion grounds and not return to her home with
the Morrison family; that when the Morrisons asked
her to go home defendant would whisper to her to stay;
that they remained together on the reunion grounds
Saturday night until toward morning, when they start-

ed for defendant's home, a distance of twelve or fifteen miles, arriving there about daylight Sunday morning. That defendant's home was a one-room house, in which were two beds; that no other persons were at defendant's home when they arrived, and that they remained there together from the time of their arrival until Monday morning about two o'clock when her father, the constable, John Thurman, Perry Riniker and Mat Morrison came there and took her to her father's home. Prosecutrix further testified that during the time they were at defendant's home together defendant laid down on the side of the bed by her; that she had her clothes off, and that she went to sleep while they were in that position, and that she was asleep when her father and the officer arrived there Monday morning. Prosecutrix further testified that none of her family knew she was with defendant.

Defendant testified that he first saw prosecutrix at the reunion grounds and that she remained there and went home with him "because she wanted to;" that he did not take her away for the purpose of having sexual relations with her, and that he did not have sexual relations with her; that it was at her request that she went home with him, and that he expected to find his wife and family at home when he arrived there; that he knew his wife had gone to her father's home that day, but expected her to return to his home on Saturday evening. Defendant further testified that he and prosecutrix were together at the reunion pretty much all day, and admitted that he was with her when Mamie Morrison came after her to get her to return home with the Morrisons; that he stayed with her Saturday night; that they left the reunion grounds at dark Saturday night and arrived at home at daybreak, having walked all night, the distance being fifteen or sixteen miles; that his home was a one-room house, and that he and prosecutrix remained together at his home from the time they arrived there until early

Monday morning, when the father of prosecutrix and the officer came to his house and arrested him. On cross-examination defendant testified that he requested the prosecutrix to remain at the reunion with him, and that after reaching his home he laid down on the side of the bed by her, with his shoes and coat off, and asked her why she thought his wife had not come, and that she was undressed at the time; that he remained there with her all day Sunday, except a short time when he went to a neighbor's house who lived a couple of hundred yards from his home; that he did not know that his child was sick at his wife's father's home until after his wife came home. However, his wife's father lived only a mile and a half from where he and prose- cutrix were together from early Sunday morning until early Monday morning. Defendant further testified that his wife was sick on the day of the trial; that he took a buggy and went after her, but she was too ill to attend the trial; that he and his wife had been living together since this trouble.

J. William Miller, witness for defendant, testified that defendant's wife was at his (Miller's) home on the day of the trial; that she was not well when he left home, and that he did not suppose she was well enough to attend the trial. On cross-examination this witness testified that defendant's wife stated to him that she would attend the trial if they had to have her and would come after her.

There was also other evidence introduced on the part of the defendant tending to show that the reputa- tion of the prosecuting witness for chastity was bad.

At the close of the evidence the court instructed the jury upon every phase of the case to which the testimony was applicable. We do not deem it essential to reproduce the instructions given, but will give them such attention as we deem necessary during the course of the opinion. The cause was then submitted to the jury and they returned a verdict finding the defendant

guilty as charged in the information and assessed his punishment at three years' imprisonment in the State penitentiary. Timely motions for new trial and in arrest of judgment were filed and by the court taken up and overruled. Sentence and judgment were entered of record in conformity to the verdict returned and from this judgment the defendant in due time and proper form prosecuted his appeal to this court, and the record is now before us for consideration.

## OPINION.

In the consideration of this cause we are not favored with a brief or even any suggestions concerning the errors complained of as disclosed by the record; however, in obedience to the commands of the statute we will carefully analyze the disclosures of the record with the view of ascertaining if any substantial error has been committed in the trial of this cause.

### I.

We have analyzed in detail the disclosures of the record as to what occurred during the progress of the trial of the defendant in this cause and find that numerous objections were made upon the introduction of evidence upon the part of the State. Upon this proposition it is sufficient to say that we have examined very carefully the objections urged to the testimony offered by the State, and in our opinion the testimony as offered to which objections were interposed was admissible; at least, we have reached the conclusion, after a careful analysis of the numerous objections to the introduction of evidence, that there was no substantial error in the action of the trial court in the admission or rejection of evidence. The evidence as offered by the State, to which objection was made, manifestly had a tendency to establish some essential elements of the crime charged. As to the rulings of the court excluding evidence offered by the defendant,

the motion for new trial fails to preserve the action of the trial court upon that subject; hence, any complaint as to the rejection of testimony offered by the defendant is not before us for review.

## II.

Our attention is directed to the application for a continuance on the part of the defendant and the action of the court in overruling it. It is sufficient to say upon that question that we have fully considered the application, and in our opinion there was no error in denying the same. Granting or refusing applications for continuances in criminal cases is a matter that frequently rests within the sound judicial discretion of the trial court, and unless it is apparent that such discretion has been abused and arbitrarily exercised the appellate courts are not inclined to interfere with the action of trial court upon this subject. [State v. Day, 100 Mo. 242; State v. Cochran, 147 Mo. 504; State v. Burns, 148 Mo. 167.] But aside from this, an examination of the record discloses that the application for a continuance is not embodied in the bill of exceptions which is signed by the judge of the trial court. This being true, it is not a subject for review by this court.

## III.

We have carefully considered the instructions which were given to the jury at the close of the evidence, and we are unable to discover any substantial error in the declarations as given. They are substantially in form with instructions which have heretofore met the approval of this court, applicable to offenses of this character. They required the jury, before they were authorized in returning a verdict of guilty, to find beyond a reasonable doubt every essential element necessary to constitute the offense with which defendant was charged. The jury were fully informed by an appropriate instruction that the law presumed the innocence of the defendant and that this

presumption continued with him until it had been overcome by evidence which established his guilt to their satisfaction and beyond a reasonable doubt. The jury were also informed that the burden of proving the guilt of the defendant rested with the State, and if they had a reasonable doubt of the defendant's guilt they should acquit him. It may be further said that the court gave to the jury full information as to their duty in determining the credibility of witnesses and the weight and value of their testimony, substantially telling them that they were the sole judges of the credibility of the witnesses as well as the weight and value of their testimony, and in determining what weight and credit they should give to the testimony of any witness they should take into consideration the interest such witness may have had in the result of the trial, the relationship, if any, of any witness to the defendant or to the prosecuting witness, the attitude and demeanor of the witness on the witness stand, and finally told the jury that if they believed that any witness had wilfully and knowingly sworn falsely to any material fact in issue, they were at liberty to disregard any or all of such witness's testimony.

A careful consideration of all the instructions indicates very clearly that all of the subjects to which the testimony had any reference were fully covered by them.

The defendant requested the court to instruct the jury as follows: "The court instructs the jury that if you find and believe from the evidence that the defendant did have sexual relations with Myrtle Miller, unless you further find that he took the said Myrtle Miller for the purpose of concubinage, if you find that he did take her, you should acquit the defendant, as sexual intercourse is not concubinage, as defined in these instructions." This instruction was refused, and we think properly so, for the reason that the matters embraced in that instruction had been fully

covered by instructions given by the court. The court in its instructions had clearly presented the gravamen of this offense; that the essential element of it was the taking away of the female under the age of eighteen years for the purpose of prostitution and concubinage; hence, we take it that the instruction as offered by the defendant was a repetition of what had already been declared to the jury by the trial court, and it constituted no error to decline to give the instruction requested.

## IV.

This leads us to the consideration of the question as to the sufficiency of the evidence to support the verdict. We have indicated in the statement the nature and character of the evidence upon which this cause was submitted to the jury. This cause is no exception to causes generally of this character. It presents evidence both ways, and it is sufficient to say that it was the province of the jury to settle and adjust the conflict in the evidence. It needs no citation of authorities upon the proposition that this court will not undertake, if there is any substantial evidence to support the verdict, to retry the cause upon the mere disclosures of the record. This has been the uniform expression of this court. [State v. Tetrick, 199 Mo. 100; State v. Mathews, 202 Mo. 143; State v. Smith, 190 Mo. 706; State v. Williams, 186 Mo. 128.]

## V.

We have indicated our views upon the legal propositions as disclosed by the record. We see no reason for further discussing the complaints presented by it. The trial court fully and fairly declared the law to the jury applicable to this case. There was substantial evidence upon which the jury had the right, if they believed it, to predicate their verdict. Finding no substantial error disclosed by the record in this cause the judgment of the trial court should be affirmed, and it is so ordered. All concur.