THE STATE v. BERT BROYLES, Appellant.—295 S. W. 550.

Division Two, June 3, 1927.

**1. APPEAL: Filed after Twelve Months: Dismissal.** Unless the Attorney-General files a motion to dismiss, the appellant is not required to show cause for failing to perfect his appeal within twelve months, but the appeal will be considered on its merits.

**2. ASSIGNMENTS: Act of 1925: Retroactive Operation.** If the motion for a new trial was filed before the Act of 1925 became effective, the former rules relating to assignment of errors will be followed.

**3. FORMER JEOPARDY: Trial for Attempted Robbery: Proof.** A plea of former jeopardy does not prove itself. It is unavailing unless supported by necessary record proof, showing that the offense charged in the former trial is the same as the one for which defendant is being tried, that it was based on the same facts, and that the trial therein resulted in a conviction or acquittal.

**4. INDICTMENT: Assault to Kill.** An indictment which alleges the offense in the language of the statute, covers all the essential elements of the offense as defined in the statute, and fully and clearly advises the defendant of the nature and cause of the accusation against him, is sufficient.

**5. EVIDENCE: Acts of Co-conspirator: Not Done in Defendant's Presence.** The conspiracy to rob the bank being clearly established, both by defendant's testimony in chief and the testimony of a co-conspirator, every word uttered and every act done by any one of the four conspirators in furtherance of the concerted plan to rob the bank, whether uttered or done in the presence or out of the presence of the one on trial for an assault with a felonious intent to kill the cashier, growing out of such attempt to rob, is competent and admissible in evidence.

**6. WITNESS: Indorsement on Indictment: Surprise: Waiver.** It is not error to indorse the name of a witness on the indictment after the trial begins, or to permit such witness to testify unless the name of such witness has been withheld purposely; and defendant's failure to move for a continuance on the ground of surprise amounts to a waiver of a right to complain of surprise.

**7. ASSAULT: Instruction: No Wounding.** In the trial of a defendant charged with an assault with an intent feloniously to kill, the giving of an instruction telling the jury that "no striking or wounding of the person assaulted" is necessary to constitute the offense, is not error.

**8. ———: ———: Circumstantial Evidence.** Where the State's case rests upon direct and positive evidence, no instruction on circumstantial evidence is required.

**9. ———: ———: Covered by Others.** It is not error to refuse correct instructions asked by defendant when their hypotheses are fully covered by others given.

**10. JUROR: Non-Resident.** An assignment in the motion for a new trial that one of the trial jurors was not a resident of the county and that such fact was not known by the defendant until after the verdict was returned, if unsupported by any evidence, cannot be considered on appeal, but the presumption that he was a resident and otherwise qualified as a juror must prevail.

**11. JURY: Passion and Prejudice: Minimum Punishment.** The fact that the punishment assessed by the jury is the minimum prescribed by the statute for the offense tends to refute a charge of passion and prejudice.

---

Corpus Juris-Cyc. References: **Criminal Law,** 16 C. J., Section 769, p. 425, n. 19; Section 1331, p. 667, n. 20; Section 2027, p. 797, n. 57; Section 2362, p. 968, n. 4; Section 2433, p. 1010, n. 12 New; Section 2506, p. 1063, n. 85; 17 C. J., Section 3362, p. 95, n. 49; Section 3475, p. 181, n. 38; Section 3566, p. 220, n. 1; Section 3593, p. 256, n. 67. **Homicide,** 30 C. J., Section 162, p. 19, n. 1; Section 315, p. 118, n. 87; Section 570, p. 322, n. 65.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Dearing,* Judge.

AFFIRMED.

*North T. Gentry,* Attorney-General, and *L. Cunningham,* Assistant Attorney-General, for respondent.

(1) The indictment is in proper form and charges every element of the commission of an assault with intent to kill with a deadly weapon. Sec. 3262, R. S. 1919; State v. Baird, 271 Mo. 9. (2) The

evidence shows that the defendant shot at G. O. Jury under circumstances warranting his conviction. The evidence of the State and of the defendant shows that the shooting occurred after the attempt to rob the bank had ceased. It was proper to admit the evidence of the shooting at Jury by Gear and Stocker as it was a part of the same transaction. State v. Midkiff, 286 S. W. 20; State v. Shields, 296 Mo. 389, 246 S. W. 932; State v. Gatlin, 267 S. W. 797; State v. Holmes, 289 S. W. 904; State v. West, 246 S. W. 544; State v. Carroll, 288 Mo. 406, 232 S. W. 699. (3) The question of former jeopardy was not sufficiently raised, neither was there any evidence or record offered showing. that the defendant had been tried and acquitted or convicted for the same offense. The court could not presume that defendant had been tried and acquitted of the same offense unless proper proof was produced. State v. Burgess, 268 Mo. 420. A plea of former jeopardy was not available. The case at bar is for a separate assault on G. O. Jury. State v. Williams, 263 S. W. 195; State v. Bobbitt, 228 Mo. 272. The defendant had not been tried for assault with intent to kill. The former jeopardy must be on the identical offense. State v. Tedder, 294 Mo. 405; State v. Clinkingbeard, 296 Mo. 34. (4) The instructions given by the court fully covered the law of the case. The court cannot be convicted of error for refusing to give instructions on points already covered. State v. Stuart, 289 S. W. 822; State v. Kunkel, 289 S. W. 865; State v. Mitts, 289 S. W. 935; State v. Gilden, 289 S. W. 821. (a) The giving of an instruction on *falsus in uno, falsus in omnibus,* is largely in the discretion of the trial court. There was no abuse of that discretion. State v. Gonder, 289 S. W. 645. (b) The refusal to instruct on the testimony of an accomplice was not error. State v. Merrell, 263 S. W. 118. (c) There was direct evidence in the case and an instruction on circumstantial evidence was not required. State v. Hahn, 289 S. W. 845; State v. Crawford, 289 S. W. 961.

HENWOOD, C.—On March 20, 1925, an indictment was returned against appellant, Steve Gregory and William Stocker, in the Circuit Court of Jefferson County, charging them with an assault with intent to kill G. O. Jury on February 28, 1925. Appellant was tried alone, and found guilty, and the jury assessed his punishment at imprisonment in the penitentiary for two years. He was sentenced accordingly and appealed.

The only conflict in the evidence is presented by that part of appellant's testimony which relates to facts and circumstances immediately surrounding the alleged assault. In the morning of February 28, 1925, appellant, Steve Gregory (sometimes called Gear), William Stocker and Clarence McKinley met by appointment in East St.

Louis, Illinois, at the east approach of the St. Louis Free Bridge across the Mississippi River. After further discussing their plans of the night before, they crossed the river in a Marmon car and took the LeMay Ferry Road out of St. Louis for the town of Barnhart in Jefferson County, *to rob the bank at Barnhart.* Before reaching Barnhart they stopped on a little hill and agreed on a definite plan of attack. Gregory had been in Barnhart a few months before. Appellant, being the driver, stopped the Marmon in front of the bank, headed east and with the driver's seat on the side next to the bank. Each member of the party carried a loaded pistol of large calibre and some of them had two. McKinley had a grip, also, in which to carry away the loot. Appellant and McKinley entered the bank, and Gregory and Stocker went into the hardware store in the adjoining building where the town post office was kept. Gregory bought some cartridges for his pistol, and he and Stocker stepped outside of the store, but immediately returned and "held up" the place. "A lot of people waiting for their mail" were ordered to throw up their hands and the robbers then "went through" the post office. Meanwhile, appellant and McKinley were engaging the attention of G. O. Jury, cashier of the bank, by inquiring about work, board and the distance to Crystal City. While appellant was talking to the bank cashier (Jury), he was standing close to the cage window and the cashier could not see what, if anything, appellant had in his hands. About this time the cashier's attention was attracted to the door in the rear, which opened into the hardware store. The cashier went back and opened this door and Gregory (then in the rear of the hardware store) "poked a gun" at him and "told him if he moved he would kill him." The cashier slammed the door shut, and returned to the bank cage with his "45 Automatic" and ordered appellant and McKinley out of the bank. At that time appellant and McKinley "had their guns drawn on" the cashier, but he "kept behind the partition" and "kept the arrangements of the bank" between them and himself. As the cashier advanced to the front part of the cage and out to the front door of the bank, appellant and McKinley backed out of the building to the sidewalk and the Marmon in front. The cashier followed to the sidewalk and there was an exchange of shots. Just when and how many times the cashier fired does not appear. He says appellant shot "directly at" him "at least twice."

McKinley testified for the State and, he says, without any arrangements or promises "as to what would be done with" his case. He says ten or fifteen shots were fired; that Gregory and Stocker came out of the hardware store shooting, and shot at the cashier from the right; that appellant shot once from the driver's seat of the Marmon.

When asked how many shots there had been before appellant fired, he said, "One is all that I know of." The court stenographer's notes, read in evidence, showed that, in a case entitled "State of Missouri against Bert Broyles," tried the previous day in the same court, McKinley, when asked whether he saw appellant fire any shots, said, "I don't know, I don't know whether Bert did or not."

The cashier was not hit, but several bullets struck the bank building; one bullet was picked out of one of the partitions; another was found on the floor in the lobby; and another penetrated the wall between the bank and hardware store. McKinley testified that appellant "said he was shot."

Mrs. Barnhart was the only other person in the bank. When the cashier returned from the rear of the bank with his pistol he told her to get down on the floor, and she did, on the opposite side of the cage from appellant and McKinley. She testified, in part:

"I was alarmed and couldn't see much, only I saw them run out of the bank. . . .

"I couldn't see them until they were going out of the door. I became too frightened, and I knew something was wrong, but I didn't see anything else. . . .

"I saw a man at the window with two guns."

Appellant denied on the stand that he, at any time while in the bank or upon leaving the bank, had a gun in his hand, though he admitted having a "32 automatic" in his possession. He also denied that he fired any shots at the cashier "or anybody else." All other material facts and circumstances were either expressly admitted or not denied by him. When questioned on direct examination, he testified, in part, as follows:

"Q. What did you say to Mr. Jury? A. I asked him if there was any railroad work around there.

"Q. Who was with you? A. Clarence McKinley.

"Q. Well, I will ask you what your intention was when you went into the bank? A. To hold it up.

"Q. Had that been planned? A. Yes sir.

"Q. Who had planned it? A. I and Clarence McKinley and Steve Gear [Gregory] and Stocker.

"Q. What occurred with reference to this plan; were they changed when you got into the bank? A. Well, we changed our minds when we got in there.

"Q. What caused you to do that? A. I didn't have any desire for it when I got in there."

Several witnesses from Washington Park (suburb of East St. Louis), Illinois, and one from Elsberry (in Lincoln County, Missouri), testified to appellant's previous good reputation for morality and law-abiding citizenship, in both communities.

While appellant did not perfect his appeal in this case within twelve months, as prescribed by statute, yet, the Attorney-General did not file a motion to dismiss the appeal. In this situation appellant is not required to show good cause for the delay, and the appeal will be considered on its merits. [Sec. 4107, R. S. 1919; State v. Yates, 256 S. W. 809.] In deference to the Attorney-General, however, it should be noted that he has briefed the case in its entirety and requests an affirmance of the judgment instead of a dismissal of the appeal. It should also be noted that appellant has filed no brief, leaving the case for our consideration on all assignments of error properly presented for review in the motions for new trial and in arrest of judgment. And the case being tried and the motions filed before the Act of 1925 became effective, the former rule of considering assignments less specific in character must be followed. We have assumed this burden and discharged it.

I. At the beginning of the trial, when the State began to examine its first witness, appellant's counsel made the following objection: "I desire to object to the introduction of any testimony in this case

**Former Jeopardy.** for the reason that it is placing this defendant twice in jeopardy for the same offense, which is contrary to the law and Constitution of this State. Under Mr. Jury's testimony there was an assault committed and all of the acts testified to here today were in that one assault and that one act. I have reference to the case we have just tried wherein he was charged with bank robbery."

The plea of former jeopardy, as made by counsel, refers to a former trial of appellant on a separate and distinct charge from the charge in this case. But, even though the plea had asserted a former acquittal or conviction on this same charge, the mere plea alone would have been without avail, unless supported by the necessary record proof, showing the offense charged to be the same, and that it was based on the same facts, and that the trial resulted in a conviction or an acquittal. While some reference is made in the evidence in this case to the evidence given in the trial of another case entitled "State of Missouri against Bert Broyles" in the same court on the previous day, and while the official court reporter (witness C. F. Jarvis) read into the evidence in this case a certain portion of the testimony of the witness Clarence McKinley in said other case, for the purpose of showing that he changed his testimony on the same matter in this case, we do not find anything in this record to show what offense was charged, what the essential supporting facts were, or what the result of the trial was, in the other case referred to. Appellant's plea of former jeopardy could not prove itself. It was

properly overruled. [State v. Burgess, 268 Mo. 1. c. 420, and authorities cited.]

II. Immediately following the plea of former jeopardy, objection was made to the introduction of any evidence because of the insufficiency of the indictment. No motion to quash was filed and no particular imperfection was pointed out in the objection. Omitting the caption and other formal parts, the indictment reads as follows:

**Indictment.**

"The Grand Jurors of the State of Missouri, summoned from the body of Jefferson County, impaneled, sworn and charged to inquire within and for the body of Jefferson County and State aforesaid, now here in court, upon their oaths present that Bert Broyles, Steve Gregory and William Stocker on the 28th day of February, 1925, at the County of Jefferson and State of Missouri, in and upon one G. O. Jury feloniously, on purpose and of their malice aforethought wilfully and deliberately did make an assault, and did then and there on purpose and of their malice aforethought deliberately and feloniously shoot at him the said G. O. Jury, with certain pistols loaded with gun-powder and leaden ball which they the said Bert Broyles, Steve Gregory and William Stocker, then and there had and held in their hands, with the felonious intent then and there him the said G. O. Jury on purpose and of their malice aforethought deliberately and feloniously to kill and murder, contrary to the form of the Statute in such cases made and provided and against the peace and dignity of the State."

We are unable to find any defect in this indictment. It alleges the offense in the language of the statute, covers all essential elements of the offense as defined by the statute, and is drawn with unusual care and precision. [Sec. 3262, R. S. 1919.] It fully and clearly advised appellant of the nature and cause of the accusation against him. We rule, therefore, that there is no merit in the challenge of the indictment.

III. Appellant assigns as error the admission of the testimony of the witness Stein and other witnesses as to "occurrences" in the hardware store in which Gregory and Stocker participated, because the things there said and done were not in the presence of appellant.

**Acts of Co-conspirator.**

In the face of appellant's bold admissions on the stand, of the "plan" to rob the bank, this complaint cannot be treated seriously. When asked by his own counsel, "Who planned it?" he answered, "I and Clarence McKinley and Steve Gear [Gregory] and Stocker." One of his co-conspirators (McKinley), testifying for the State, tells

of the "plan" in detail. *Gregory had been in Barnhart before.* From the time the four would-be bank robbers got out of the Marmon in front of the bank, *every word uttered* and *every act done* by each of them was in furtherance of the well-developed "plan" to rob the bank. *Each and all were acting with a common purpose and design.* While Stocker held the crowd in the post office with "hands up," Gregory was to enter the bank through the door in the rear between the post office and the bank. Meanwhile, appellant and McKinley were to engage the cashier in conversation. Gregory's entry of the bank at the rear was to be the signal for the "hold up" and robbery of the bank. This part of the "plan" made more certain their ability "to cover" the cashier and others who might be in the bank, front and rear. Only the quick and fearless action of the cashier, in slamming the rear door in Gregory's face and the unusual coolness he displayed in out-generaling and out-maneuvering appellant and McKinley, prevented the robbery of the bank. Throughout the transaction, each and every member of "the gang" were *acting in perfect concert.*

In the case of State v. Shields, 296 Mo. l. c. 402, WHITE, C., announces the ancient and accepted doctrine, applicable here, in very concise language, as follows: "The rule is that where a conspiracy to do an unlawful act is shown by the evidence, a statement made by one of the parties to the conspiracy during the time of its existence and bearing upon its object and purpose, whether stated in the presence of other conspirators or not, is admissible as evidence against all." [See also State v. Midkiff, 286 S. W. l. c. 23; State v. Gatlin, 267 S. W. l. c. 798.]

IV. Only general complaint is made as to the exclusion of legal evidence offered by appellant. The record shows very few adverse rulings on appellant's tenders of proof and in these we find no error.

V. The "16th" assignment of error in the motion for new trial covers an objection made to the indorsement of the name of one "Reisch" on the indictment and to the action of the trial Witness. court in permitting him to testify. Obviously, the wrong name was inserted in the motion as the record fails to show that any witness of that name testified. Such objection was made, however, to the witness Dale. There was no error in the ruling on this objection. [Sec. 3889, R. S. 1919.] Moreover, appellant's failure to move for a continuance on the ground of surprise amounts to a waiver of any right to complain by reason of surprise. [State v. Whitsett, 232 Mo. l. c. 526; State v. Tate, 156 Mo. l. c. 130.]

VI.    Error is alleged in the giving of the State's instructions numbered 1, 2, 3, 6 and 7.    Our attention is not directed to any particular vice in any of these instructions and we find none.    Instruction 1 follows the language of the indictment and predicates a verdict of guilty upon a finding, from the evidence, of all facts necessary to establish the offense charged.    By Instruction 2 the court advised the jury that "no striking or wounding of the person assaulted" is necessary to constitute an assault with intent to kill.    In Instruction 3 the law is correctly declared concerning a conspiracy to do an unlawful act and its effect as applied to the facts in this case.    [State v. Carroll, 288 Mo. l. c. 407.]    The other instructions mentioned (6 and 7) were explanatory of the law relating to the previous good reputation of the accused, the presumption of innocence, and the rule of reasonable doubt, and these instructions were in the usual and approved form.

*Instructions Given.*

VII.    Appellant also complains, generally, of the court's refusal to give his instructions numbered 8, 9, 10, 11, 12 and 13.    His refused Instruction 8 purports to declare the law as to circumstantial evidence.    No such instruction was required here, as the State's case is made on direct and positive evidence.    [State v. Hahn, 289 S. W. l. c. 846; State v. Crawford, 289 S. W. l. c. 962.]    After a careful examination, we find that all of appellant's other refused instructions, which declare the law correctly, were fully covered by the instructions given.    The refusal of such instructions was not error.    [State v. Mitts, 289 S. W. l. c. 938; State v. Stuart, 289 S. W. l. c. 824.]

*Refused Instruction.*

VIII.    The motion for new trial asserts that "one Pat O'Brien who was not a resident of Jefferson County sat upon said jury, and the fact that said juror was not a resident of Jefferson County was not known to defendant until after the verdict in said cause had been rendered."    The record shows that Mr. O'Brien was not only a member of the jury, but was honored with the foremanship of that body.    As to his residence, however, the record is silent, leaving the presumption of his residence in Jefferson County and his qualifications as a juror undisturbed by any proof to the contrary.    This assignment, like others without support in the record, merits no consideration.

*Juror.*

IX.    All contentions as to the sufficiency of the evidence must fail.    The plain, outstanding facts of this record present not only a submissible case, but one of overwhelming strength in support of the verdict rendered. The fact that the punishment assessed by the jury represents

the minimum prescribed by the statute for this offense is sufficient answer to the charge of passion and prejudice against them.

It is our opinion that appellant was accorded a fair and impartial trial by both the court and the jury. The judgment is affirmed. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.