THE STATE v. VICTOR HOHENSEE, Appellant.—62 S. W. (2d) 436.

Division Two, June 24, 1933.

162

*Roy McKittrick*, Attorney-General, and *Harry G. Waltner, Jr.*, Assistant Attorney-General.

ELLISON, P. J.—The defendant and a negro boy, Val Putnam, were jointly charged by information in the Circuit Court of Greene County with a burglary and larceny alleged to have been committed on February 22, 1931. The property taken was twenty-five cents in money and an Elgin watch worth $10. After a severance, evidently, though the record does not show it, the defendant was convicted of the burglary, his punishment being fixed at imprisonment in the penitentiary for three years. He appeals but has filed no brief. The assignments of error made in the motion for new trial challenge the sufficiency of the evidence and complain of the admission and exclusion of evidence, the refusal of a continuance and the disqualification of certain of the jurors to sit in the case.

The defendant lived across lots about 200 feet from the home of A. L. Cartwright on Pine Street in Springfield. The dwelling had two rooms, one used for a kitchen and the other for a bedroom. The family of Mr. Cartwright consisted of himself, his wife and her daughter, about sixteen years old. All three were asleep in the bedroom, when, about two o'clock in the morning Mrs. Cartwright was awakened by the talking and moving of two people in the house. Soon Mr. Cartwright and the daughter woke up. The burglars remained a half hour or more talking, searching and threatening Mrs. Cartwright with a pistol in an effort to make her tell where the

family money was hid. They rummaged through the drawers of a dresser and took the money and watch from Mr. Cartwright's clothes. The next morning the wooden "button" which held the kitchen door closed was found pushed off and lying on the floor, indicating the burglars had entered that way.

All the Cartwrights testified positively they had known the defendant and Putnam theretofore and that they easily recognized the burglars as being those two boys by their looks, voices and movements though both were masked. The Cartwrights' stories were somewhat contradictory but only in particulars which go to the weight of the evidence. For instance, Mr. Cartwright said the defendant's mask was of cloth with holes cut in it for his eyes, nose and mouth, whereas the mother and daughter stated the masks were handkerchiefs without holes cut in them. Also Mr. Cartwright said he blew the coal oil lamp out when he went to bed and that when the burglars woke him up the electric light in the room was burning. He had electric service but had not been using it that night. Mrs. Cartwright testified the negro boy lighted the lamp, not the electric light, and the daughter said the lamp was burning, turned low. There are other minutiae that need not be gone into, such as a detailed description of the premises, intimations of bad feeling between the Cartwright family and the defendant's family and so on.

Early the next morning Mr. Cartwright called the witness Wyatt, master of some bloodhounds, who came with three dogs. The police, also, were notified. Apparently the police arrived first and made an inspection of the house. The Cartwrights informed them the burglars were the defendant and Putnam, and the officers went first to get Putnam. Then Mr. Wyatt gave the bloodhounds the scent by permitting them to smell in the dresser drawers that the burglars had searched. The dogs went directly to the defendant's home and smelled and scratched at a door. No one had yet arisen and nothing was done to rouse anyone. About that time the police returned to the Cartwright home with the negro boy Putnam and called Mrs. Cartwright to identify him. The boy broke loose and as he was running away the police shot him. The dogs were not put on the trail of Putnam, or, at least, never picked it up. No objection was made by defendant's counsel to the testimony about the bloodhounds. The police went to the defendant's home but did not find him there. He was located and arrested in St. Louis the following October.

The defendant's defense was an alibi. During the cross-examination of some of the police officers used by the State in making its main case this fact was forecast by certain answers elicited from them showing the police had been looking for him on other charges for several days before the Cartwright burglary and that they had been unable to find him. The defendant testified he left Spring-

field on February 19 traveling on a freight train and arrived in St. Louis on the morning of February 20. He was seeking employment. He went to the home of his sister and brother-in-law, Mr. and Mrs. Weiser, where he stayed until fall. The Weisers corroborated this story saying he was in their home each day from the morning of February 20 to February 22, and that he remained in St. Louis through the summer. The defendant's mother said the last time she saw him in Springfield before the robbery was on February 18. Ben F. Hohensee, the father of the defendant, said the latter left their home on February 17 or 18 and was away on February 21 and 22. Vernon Hohensee, a brother of the defendant, testified that on the evening of February 21 he had been to a neighborhood prayer meeting and about ten o'clock that night went back home following a route which would take him across a corner of the Cartwright's dooryard and apparently along the course which it seems the bloodhounds followed in trailing the scent to the defendant's home. (This we take to be the purpose for which the testimony was deemed relevant.) Mrs. Mildred Swertzfeger, the defendant's sister, while she lived in another part of town nevertheless had been at defendant's home every day between February 18 and February 21. She said that the police came looking for the defendant but didn't find him.

Impeaching Mrs. Cartwright, Mrs. Laura Meade testified that on the morning after the robbery Mrs. Cartwright told her she didn't know who the burglars were and that they had black socks pulled down over their faces. A few other facts will be stated in the course of the opinion.

█ Without discussion it is obvious there was enough evidence to support the verdict and judgment. We have treated assignments 1 and 2 in the motion for new trial as sufficient to raise that question though it is very doubtful if they are. They are practically the same as those considered in State v. Moore (Mo.), 36 S. W. (2d) 928.

█ The next assignment is that the court erred in refusing to grant a continuance requested by the defendant. Nowhere in the whole record is it shown that application for a continuance was made; nor does the bill of exceptions show any ruling on such a request or exceptions saved. There is therefore nothing for review under this assignment. [State v. Fleetwood, 223 Mo. 69, 77, 122 S. W. 696, 698.]

█ As stated, the defense was an alibi, the defendant and several of his witnesses having testified he was not in Springfield between February 19 and a date long after the burglary was committed on February 22. In rebuttal the State produced a witness, Mrs. Rose Woods, who said the defendant was at her home in Springfield for about four hours on the morning and afternoon of February 21. The fourth ground in the motion for new trial assigned that this re-

buttal testimony was a surprise to the defendant and that since the trial knowledge of its falsity had come to him, ''notwithstanding the diligence of counsel to discover it before;'' and that if granted a new trial he believed he would be able to disprove the false testimony.

The motion for new trial was filed on November 23, four days after the verdict. Five days thereafter, on November 28, the defendant filed in the cause the affidavits of six persons, all of whom had been witnesses in his behalf at the trial. The substance of all these affidavits was that while the trial was in progress the State's witness, Mrs. Woods, had declared she didn't know why she was subpoenaed; that the defendant had been away from Sprnigfield for some time when the burglary was committed and was not at her house on February 21. The affidavits say that at that point a Springfield police officer admonished Mrs. Woods she had better refresh her memory as she knew what they had on her. The jurats on four of these six affidavits show they were sworn to on November 21, two days before the motion for new trial was filed. The defendant filed a similar affidavit of his own ten days after the filing of the motion for new trial. The motion for new trial was not signed or verified by him.

As to the ground of surprise. Counsel for defendant made no such contention when the evidence was offered, but without any objection whatever launched into an elaborate cross-examination of the witness which indicated the defense had at least some acquaintance with the incident testified to by her, though disagreeing with her as to the date. Having failed to ask a postponement or move a continuance on the ground of surprise, the point is waived. [State v. Broyles, 317 Mo. 284, 291, 295 S. W. 550, 554; State v. Whitsett, 232 Mo. 511, 526, 134 S. W. 555, 560.]

■ With reference to the newly discovered evidence. The witnesses whose affidavits were filed by defendant were friendly, some of them relatives, and all had testified in his behalf. There is authority for holding that in these circumstances the defendant was guilty of a lack of diligence in failing to find out the facts to which the witnesses made affidavit, before the trial was over. [State v. Cantlin, 118 Mo. 100, 111, 23 S. W. 1091, 1095.] But beyond that, it is a familiar rule that motions for new trial do not prove themselves. In asking a new trial on the ground of newly discovered evidence not only should the motion show the new evidence and the materiality thereof, but it should be supported by the affidavits of the defendant and the proposed new witnesses on that point. If the latter affidavits cannot be filed their absence should be accounted for. In this case the motion shows nothing and though four of the affidavits had been sworn to two days before the motion was filed, they were withheld from the record until five days thereafter. In view of these facts the motion was insufficient to raise and preserve the point.

[State v. Walker, 232 Mo. 252, 261, 134 S. W. 516, 518; State v. Henson, 290 Mo. 238, 247, 234 S. W. 832, 835; Devine v. Wells, 300 Mo. 177, 193, 254 S. W. 65, 70.] It has been said a trial court has a discretionary right to consider affidavits filed out of time (State v. Sublett, 191 Mo. 163, 175, 90 S. W. 374, 377); but the defendant certainly has no ground for complaint because of a refusal to consider them when the motion itself is insufficient in the first instance to raise the point.

■ The fifth, sixth and seventh grounds of the motion severally complain of the refusal of the court to receive in evidence the depositions of three witnesses, Nathanila W. Thompson, Joseph Evola and Mary Evola. The bill of exceptions nowhere shows any depositions ever were offered in evidence during the trial. It does show that affidavits in the form of questions and answers, made by these three persons before a justice of the peace in St. Louis on November 17, the day before the trial started, were filed in the cause on November 28, nine days after the trial had ended on November 19 and five days after the motion for new trial had been filed on November 23. It may be defendant's counsel have in mind that the affidavits should have been received in support of the assignment in the motion asking a new trial on the ground of newly discovered evidence. If this is so, what has been said in the preceding paragraph applies. The evidence was not newly discovered, since all the affidavits were made before the trial began; and they were not filed with the motion. If the interrogatories were intended to be used as depositions, there is absolutely no showing of any attempt to comply with the requirements of Sections 3621-3624, Revised Statutes 1929, regarding the issuance of a commission or notice to the prosecuting attorney; and the defendant did not attempt to use them at the trial or ask a postponement because of their nonarrival if that was the reason they were not offered.

■ The eighth and ninth grounds in the motion complain generally of the exclusion of competent and relevant evidence offered by the defendant, and of the admission of incompetent, immaterial and prejudicial evidence introduced by the State. These assignments are too indefinite to comply with the statute, Section 3735, Revised Statutes 1929. [State v. Watts (Mo.), 289 S. W. 565, 567.]

■ The last assignment is that certain of the jurors were disqualified because they had previously sat in the trial of the case against Val Putnam, the negro boy jointly charged with the same offense. If that is true, the bill of exceptions does not show it, nor does it appear that the defendant raised any such point when the trial began, or at any time before his unverified motion for new trial was filed.

We find no error in the record proper, and the judgment accordingly is affirmed. All concur.