THE STATE v. SHERWOOD DAVIS, Appellant.

Division Two, December 1, 1920.

1. **TESTIMONY:** Conclusion of Non-expert. On certain conditions, a non-expert witness may give a conclusion or inference, instead of stating the facts from which the jury may draw the conclusion. Where the conclusion of the witness is based upon facts which are incapable of being accurately described, but the conclusion

State v. Davis.

conveys more clearly the fact which the witness attempts to describe, the witness may state his conclusion. But if he can clearly and correctly give the facts upon which his conclusion is based, he must state them, and leave it to the jury to draw the conclusion. And in any case in which the deduction of the witness is given, he must state the facts from which he draws the conclusion as far as he properly can. An inquiry if defendant "attempted to get to deceased before deceased pulled his gun" was asking for a conclusion which the jury could as well draw as the judge, but harmless where the witness answered that "all the attempt he was making was rushing up to him with his knife up that way." Likewise an inquiry if "he appeared to be drinking" was harmless where the witness answered that she "couldn't tell if he was drinking in the least."

2. **CROSS-EXAMINATION: Impeachment: Child Before Marriage.** On cross-examination a witness may be asked any question which will test his or her accuracy or veracity, however irrelevant the question may be to the facts in issue, or however disgraceful to the witness, except where the answer would expose the witness to a criminal charge. It is perfectly proper to ask a witness for the State upon cross-examination if she had a child born before she was married.

3. **INSTRUCTION: Threats: Nature of Transaction: Aggressor.** An instruction telling the jury that they "should consider all the threats which you may believe from the evidence were made by the deceased against defendant" and "may give them such weight in determining the nature of the transaction giving rise to the charge for which defendant is now on trial as you deem proper," is not as clear as it might be by reason of the involved expression, "the nature of the transaction giving rise to the charge for which defendant is now on trial," but that expression would include a consideration of the question as to who brought on the fight out of which the murder grew.

4. **REMARKS OF COUNSEL: Justice of Peace: Right to Carry Pistol.** A justice of the peace, as conservator of the peace, has a right to carry a weapon under the statutes; and a statement by counsel for the State, in his argument to the jury, that deceased, being a justice of the peace, had a right to carry a pistol, although such law was not embodied in the instruction, probably did not harm defendant. But a justice of the peace had no right to carry a pistol because his life had been threatened a short time before he was killed, and counsel for the State is clearly outside his duty in stating to the jury that he had such right.

5. **TRIAL: Misconduct of Court: Fining Attorney for Saving Exception.** A remark of the court indicating that the court deemed a

certain witness creditable, although there was much testimony to contradict his testimony and show his prejudice; numerous instances showing the impatience of the court with counsel for the defense; a refusal of the court to permit defendant's counsel, whose demeanor was proper, to state his objection to the court's remarks to a witness, and a remark by the court, "I have overruled your objection; anything further you want to say, sir?" and fining the attorney fifty dollars for contempt of court when he made a proper exception to said sharp remarks, were extremely prejudicial, and constitute reversible error.

Appeal from Pemiscot Circuit Court,—*Hon. Sterling H. McCarty*, Judge.

REVERSED AND REMANDED.

*S. J. Corbett* and *Ward & Reeves* for appellant.

(1) The court erred in the admissibility of testimony. (a) The court erred in permitting the prosecuting attorney to ask and have answered questions calling for conclusions of the witnesses. State v. Wertz, 191 Mo. 569; State v. Kozlictkie, 241 Mo. 301; State v. Bostwick, 245 Mo. 483; State v. Schlichter, 263 Mo. 561; State v. Evans, 267 Mo. 163; State v. Pate, 268 Mo. 431. (b) The court should have permitted State's wittnesses to be cross-examined as to the birth of the illegitimate child of Little's daughter. Muller v. Hospital, 73 Mo. 242; Muller v. Hospital, 5 Mo. App. 401; State v. Hack, 118 Mo. 92; Carp v. Ins. Co., 104 Mo. App. 520; Cantrill v. Davidson, 180 Mo. App. 420; State v. Long, 201 Mo. 675; State v. Potts, 239 Mo. 413. (2) The court erred in giving instruction 6, which did not properly declare the law, either for communicated or uncommunicated threats. In law and in this case we have to deal with two kinds of threats, communicated and uncommunicated threats—both appearing in this case. In communicated threats the jury should be instructed to take the same in consideration in determining whether or not the defendant was justified in acting on appearances in killing deceased, and in explanation of the conduct of the

parties at the time of the fatal difficulty. State v. Greaves, 243 Mo. 540; State v. Birks, 199 Mo. 276. Uncommunicated threats may be taken into consideration by the jury in determining who was the aggressor, and throwing light upon the actions and conduct of the deceased. State v. Edwards, 203 Mo. 546; State v. Birks, 199 Mo. 276; State v. Heath, 237 Mo. 264; State v. Nelson, 166 Mo. 202. This identical instruction has been held in judgment by this court to be erroneous. State v. Evans, 158 Mo. 607. (3) The court erred in refusing to rebuke attorney assisting the State. State v. Spivey, 191 Mo. 87; State v. Woodward, 191 Mo. 619. (a) It is error to permit the counsel to argue to the jury law not given by the court in written instructions. Dean v. Chandelor, 44 Mo. App. 338. (b) It is error for the state prosecutor to argue to the jury, and the court to sanction such argument, that a justice of the peace had a right to carry concealed weapons. There were no such written instructions, and besides, this is not the law. Sec. 4496, R. S. 1909; 40 Cyc. 865; State v. Julian, 25 Mo. App. 133; State v. Wisdom, 84 Mo. 177. (c) Deceased Little would not be entitled to carry concealed weapons in self-defense, because his life was threatened, since the amendment in 1909 of the statute, regulating carrying of concealed weapon. State v. Keet, 269 Mo. 206. (4) The court erred in many remarks and conduct. And in fining defendant's attorney $50 without the least sort of excuse in the presence of the jury, thereby showing partiality to the State, and ill-feeling against defendant. Drayfust v. Ry. Co., 124 Mo. App. 585; State v. Jones, 197 S. W. 158; Schmidt v. Railway, 149 Mo. 283; Rose v. Kansas City, 125 Mo. App. 236; Wright v. Richmond, 21 Mo. App. 76; State v. Hyde, 234 Mo. 255. While one remark or one statement of the court might not of itself be a reversible error, yet, when taken together, and when they indicate an attitude of mind on the part of the judge, calculated to influence the decision against the defendant, they may constitute a reversible error. State v. Drew, 213 S. W. 107; 38 Cyc. 1321; State v. Davis, 217 S. W.

91. The court committed a grievous error when, in the presence of the jury, without any justification or excuse, it fined defendant's counsel $50 for excepting to the remarks of the court, and which acts and conduct of the court were calculated to disparage counsel in the eyes of the jury, and to assume a manifestly hostile attitude towards the counsel of defendant, and creating in the mind of the jury that the defendant's counsel was seeking to take advantage of the witnesses and was transgressing the law, thereby prejudicing the minds of the jury against defendant's counsel and defendant. 38 Cyc. 1322; 21 Encyc. of Pl. & Pr., 1000; Walker v. Coleman, 55 Kan. 381; House v. State, 57 S. W. 825; Hine v. Ry. Co., 115 Mich. 204; Wheeler v. Wallace, 53 Mich. 355.

*Frank W. McAllister*, Attorney-General, *George V. Berry*, Assistant Attorney-General, for respondent.

(1) The questions of counsel for State did not call for an opinion or conclusion of the witness. If they had, an opinion would have been competent. State v. Evans, 267 Mo. 184; State v. Meyers, 198 Mo. 229; State v. David, 131 Mo. 395; State v. Buckler, 103 Mo. 206; State v. Parker, 96 Mo. 293; Heimbach v. Heimbach, 274 Mo. 316; Black's Law Dic. page 855; Crowell v. State, 56 Tex. Crim. 481; Henderson v. State, 49 Tex. Crim. 271; 16 C. J. 751. (2) Quincy Little Bilby having denied being the mother of an illegitimate child, defendant was bound by her answer. Such cross-examination is in the discretion of the trial court. State v. Potts, 239 Mo. 413; State v. Long, 201 Mo. 675; State v. Parker, 96 Mo. 390; Wendling v. Bowden, 252 Mo. 696; Miller v. Journal Company, 246 Mo. 724; Goins v. Moberly, 127 Mo. 118; 1 Greenleaf on Evidence, sec. 461b. (3) Instruction 6 was a correct declaration of the law on communicated and uncommunicated threats. Defendant lodged no specific objection against it. State v. Greaves, 243 Mo. 551; State v. Birks, 199 Mo. 276; State v. Hale,

238 Mo. 511; State v. Heath, 237 Mo. 264; State v. Smith, 114 Mo. 419; State v. Hicks, 92 Mo. 436; State v. Fletcher, 190 S. W. 323; State v. Davis, 217 S. W. 87; State v. Katz, 266 Mo. 503; State v. Lewkowitz, 265 Mo. 636. (4) The court did not err in refusing to rebuke counsel for the State. He was not making an improper argument. State v. Baker, 246 Mo. 376; State v. Rasco, 239 Mo. 580; State v. Harvey, 214 Mo. 411; State v. Church, 199 Mo. 638; State v. Allen, 174 Mo. 698; State v. Gartrell, 171 Mo. 512; State v. Spivey, 191 Mo. 113; State v. Hibler, 149 Mo. 484; State v. Brooks, 92 Mo. 589. (a) A justice of the peace being a conservator of the peace, may carry a concealed weapon. Secs. 4496, 7382, 4972, 4686, 5285, R. S. 1909; Kelley's Crim. Law & Prac. secs. 59, 60, 1184; State v. Mosby, 81 Mo. App. 207; State v. Pollock, 49 Mo. App. 447; State v. McBrien, 265 Mo. 604; State v. Levy, 262 Mo. 190. (5) There was no misconduct on the part of the court. The fining of counsel did not prejudice defendant's case. State v. Fletcher, 190 S. W. 323; State v. Teeter, 239 Mo. 483; State v. Hyde, 234 Mo. 255; State v. Walton, 255 Mo. 244; State v. Miles, 199 Mo. 547; State v. Sublett, 191 Mo. 174; State v. May, 172 Mo. 646; State v. Dewitt, 152 Mo. 86; State v. Nickens, 122 Mo. 611; State v. Pagels, 92 Mo. 310; Copeland v. Ins. Co., 191 Mo. App. 445; Steptowski v. Transit Co., 108 Mo. App. 309.

WHITE, C.—On a trial in the Circuit Court of Pemiscot County the defendant, Sherwood Davis, known as "Bill" Davis, was convicted of murder in the second degree and his punishment assessed at imprisonment in the penitentiary for a term of fifteen years. From that judgment he appealed.

This is the second appearance of this case. The defendant was convicted on a former trial and appealed to this court where the judgment was reversed; the case is reported in 217 S. W. 87. The facts are fully stated in the opinion rendered at that time. The evidence on the latter trial varied very little, substantially, from the

evidence produced at the first trial; therefore it is unnecessary to state it except briefly.

The homicide occurred in April, 1918. The defendant was within the draft age, and H. P. Little, the man he killed, was justice of the peace. It appears from some of the testimony that the defendant had a wife and two children, and Little had been instrumental in getting his classification changed from fourth class to first class; there was ill-feeling between the defendant and Little on that account, and possibly on other accounts.

On the day of the homicide the defendant was arrested and brought by the constable before Little, where he had an altercation with the justice of the peace in regard to giving a bond. That was in the forenoon. Early in the afternoon of that day, while Little was standing on the street talking to a man named Lumley, the defendant approached with a knife in his hand demanding to know why Little and a man named Duffy, defendant's father-in-law, had tried to get defendant taken from his family and transferred from class four to class one, by the draft board. He advanced upon Little with his knife; Little drew a revolver from his pocket, and snapped it at the defendant who continued to advance; Little backed off, stumbled over a pole and fell. As he lay upon the ground, apparently stunned, the defendant came up to him, drew back his coat, and stabbed him in the breast with a knife, and made a stroke at his throat. He then took the pistol which had fallen from Little's hand and struck Little on the head with that. Lumley then tried to help Little to his feet; Davis assisted him and said: "Old man, I guess I have killed you; that is what I aimed to do." Several witnesses were in sight of the encounter, and with slight variations testified for the State to the same facts. The State also showed threats made on different occasions by the defendant against Little.

The defendant offered testimony tending to show that he approached Little in a good humor without any

intention to assault him, that the first hostile demonstration was made by Little himself in drawing his revolver and attempting to shoot; that after that demonstration defendant approached, seized Little and in the struggle the two fell to the ground, the defendant with his knife in his hand with which he struck Little. He also attempted to show that Little was drunk, and that he had acted unfairly and in a prejudiced manner when the defendant had been brought before him in the forenoon of that day. Evidence also was offered by defendant to show that the deceased had made threats against his life at various times.

I. The first error assigned by the appellant and pressed upon the attention of the court was the admission by the court of opinion evidence. It is urged that witnesses were allowed to state their con-

Conclusion of Witness.

clusions rather than state the facts of the occurrence. In the cross-examination of Lumley, the principal witness for the State, this occurred: "Q. Ask you whether or not Mr. Davis made any stroke with the knife or attempted to get to Mr. Little before Little pulled his gun?"

The defendant objected to this, defendant overruled, and exception noted.

The witness answered: "All the attempt he was making—rushing up to him with his knife up that way. That was all I seen."

Further, in the examination of another witness who testified as to the appearance of Lumley at the time, this occurred:

"Q. Did he appear to be drinking, or anything, Mrs. Boston?

"Mr. Ward: I object; that's her conclusion.

"By the Court: Court will let her answer.

"Mr. Ward: Exception."

On certain conditions, a non-expert witness may give a conclusion or an inference, instead of stating the facts

from which the jury may draw the conclusion. Where the conclusion of the witness is based upon facts which are incapable of being accurately described, but the conclusion conveys more clearly the fact which the witness attempts to describe, the conclusion may be given. But if the witness can clearly and correctly give the facts upon which a conclusion may be based, then it is for the jury to draw the conclusion. In any case where the deduction of the witness is given he must also state the facts from which he draws the conclusion so far as he properly can. [State v. Evans, 237 Mo. l. c. 184-5; Rearden v. Railroad, 215 Mo. l. c. 137; Partello v. Railroad, 217 Mo. l. c. 656; Kirchof v. United Rys. Co., 155 Mo. App. l. c. 83; State v. Kozlickie, 241 Mo. 301; State v. Wertz, 191 Mo. 569; State v. Buchler, 103 Mo. l. c. 207.] In the Buchler case it was held that the witness might give his conclusion as to the expression of emotion on the face of a person. The countenance of defendant might be stated by the witness to show anger, ferocity or hatred. A witness may state that a person "looked scared." [State v. Ramsey, 82 Mo. 137.] But it was not admissible for the witness to state in regard to the defendant and the prosecuting witness, his sweetheart, "that he seemed to think a good deal of her."

It is clear from the authorities cited that the statements by the witness that the question asked Lumley, if Davis "attempted to get to Mr. Little before Little pulled his gun," was asking for a conclusion which the jury could as well draw as the witness, and witness could state the facts indicating such an attempt if there was one. However, the defendant was not harmed by the question because the answer of the witness gives a specific fact. The answer was: "All the attempt he was making, rushing up to him with his knife up that way."

The question asked by the prosecutor of Mrs. Boston, "Did he appear to be drinking or anything?" if it was a conclusion was harmless because the witness answered that she couldn't tell that he was drinking in the least.

II. When Quincy Little, a daughter of the deceased, was introduced as a witness for the State and testified strongly against the appellant, the defendant's counsel asked her if she were married. She answered that she had been married a month or two. After some colloquy, which need not be reproduced, the defendant offered to prove by the witness that she had a child born before she was married. This offer was by the court refused and the defendant excepted.

**Cross-Examination.**

On cross-examination a witness may be asked any question which would test his or her accuracy or veracity, however irrelevant the question may be to the facts in issue or however disgraceful the answer to the witness, except where the answer would expose a witness to a criminal charge. [State v. Long, 201 Mo. l. c. 675, and cases cited; State v. Potts, 239 Mo. 413.] The offer was a perfectly proper one, and it was error to exclude any proper question which would tend to impeach the veracity of the witness. It is not necessary to say that the error in that regard was alone sufficient to warrant a reversal of the case, but inasmuch as the case must be retried the court should, on another trial, permit the question to be asked.

III. Error is assigned to the giving of instruction numbered 6, which appears as follows in the record:

"In determining whether the defendant was justified in acting upon appearances and stabbing the deceased, the jury may take into consideration any threats which may have been made by deceased against the life of the defendant and communicated to defendant prior to the killing, if the jury finds from the evidence that any such threats were made and communicated.

**Threats.**

"You *should* consider *all* the threats which you may believe from the evidence were made by the deceased aganst the defendant, *may* give them such weight in determining the nature of the transaction giving rise to

the charge for which the defendant is now on trial as you deem proper. Mere threats, however, will not justify on the ground of self-defense the shooting of one by another, nor will threats alone warrant the party against whom they are made in attacking and killing the party who made them."

The point made against this instruction is that while the jury in determining whether the defendant was justified in acting upon appearances was allowed to take into consideration communicated threats prior to the killing, the instruction does not permit the jury to weigh all threats, communicated and uncommunicated, in determining who is the aggressor, because the expression, "the nature of the transaction" is uncertain in meaning. Counsel correctly states the rule that communicated threats may be considered by the jury only in determining whether a defendant had a right to act upon appearances, but uncommunicated as well as communicated threats may be considered in determining who was the aggressor, and as tending to throw light upon the conduct of the deceased at the time of the encounter. The instruction is almost an exact copy of instruction given in the case of State v. Greaves, 243 Mo. l. c. 548, and approved by this court, l. c. 551. The instruction, it is true, is not as clear as it might be by reason of the involved expression, "the nature of the transaction giving rise to the charge for which the defendant is now on trial," but undoubtedly that expression would include the consideration of the question as to who brought on the fight.

IV. In making the closing argument to the jury Judge Gossom, employed to assist in the prosecution, made remarks which were objected to, and this occurred:

Right to Carry Pistol.

"Mr. Corbett: I object to that statement of the assistant prosecuting attorney that a justice of the peace has the right to carry a pistol under the laws of this State—that he was a conserver of the peace,—

"By the Court: And he also made the statement just preceding that—

284 Mo.—45

"Judge Gossom: 'And he had another right to carry a pistol because the defendant had told him not over thirty minutes before that that he would see him before the sun went down.'

"Mr. Corbett: I am objecting to that because that is not his duty, he wasn't a person whose duty it was to serve process under the laws of this State and that's what the statute says:

"By the Court: Or a person to conserve peace? Overrule your objection.

"Mr. Corbett: Note exception."

It is not proper for counsel to state any law applicable to the case not embodied in the written instruction to the jury. It is probable that defendant wasn't harmed by the statement that a justice of the peace, as a conserver of the peace, had a right to carry a weapon under the laws of the State. Section 4596 excepts from the penalty for carrying concealed weapons certain officers, including persons whose bona-fide duty it is to aid in conserving the public peace. A justice of the peace is made a conserver of the peace by several sections of the statute. [Secs. 4972, 4686, R. S. 1909.] The justice of the peace, however, had no right to carry a pistol because his life had been threatened a short time before, and the counsel for the State was clearly outside his duty when he made the statement to that effect. [Sec. 4496, R. S. 1909.] The objection, however, made by the defendant, was not on the ground that the justice didn't have a right to carry a weapon for his own protection, but on the ground that the justice of the peace was not a person whose duty it was to serve a process. On a retrial of the case the error probably will not be repeated.

IV. A final error most urgently presented by the appellant was the conduct of the trial court in the management of the case in such a way as to show prejudice against the defendant. Lumley went on the stand for the State, and on cross-examination testified: "I have been living around

Misconduct of Court.

Tyler ten, but have been right in Tyler straight running over three, years.'' Then this occurred:

''By the Court: If a man has been living there this length of time I don't see—let's get along here.

''Mr. Ward: We object to the remarks of the court.

''By the Court: Mr. Ward, the court wants you to get everything that is material, plenty of time to go over all that is necessary, but I don't want to be going over the same thing so much and arguing with the witness.

''Mr. Ward: Just asked him the question one time, Judge.''

The remark of the court indicated that the court deemed Lumley a creditable witness, although there was much testimony to contradict his statement and show prejudice on his part. This occurrence alone would not warrant a reversal, but several instances are shown by the record indicating impatience of the court with counsel for defense. Finally, in the examination of Mrs. Boston, who had testified on a former trial to a threat which the defendant had made against the deceased, and' who on this trial stated that the threat was made by the deceased against defendant, there was some confusion as to what she meant by her use of pronouns ''he'' and ''him'' instead of the names of the parties. The witness was asked to explain what she meant, and this occurred:

''Q. That is exactly what the court asked you, 'who said that?'

''By the Court: Mrs. Boston, explain now just like you meant it who said it—just take your time.

''Mr. Ward: I object to that—

''By the Court: I am overruling your objection—go ahead and explain.

''Mr. Ward: Exception—I am objecting to the court not letting me make my objection.

''By the Court: I have let you make your objection and overruled it—anything further you want to say, sir? Proceed now and explain. '

"Mr. Ward: We except to the remarks of the court and the conduct of the court.

"By the Court: Mr. Clerk, let your record show Mr. Ward is fined fifty dollars for contempt of court.

"Mr. Ward: I except to the court fining me fifty dollars when I am only trying to protect the rights of my client in this court.

"By the Court: Proceed with this case—go ahead and answer the question."

There is nothing in this examination to indicate that the defendant's counsel was going beyond his rights in making an objection, which the court did not permit him to make, or that there was any disrespect for the court in his demeanor. The judge of the court reproved the attorney with a sharp remark, saying, "Anything further you want to say, sir?" Then ordered the witness to proceed. On a proper exception to the remarks of the court, so far as the record shows, the court ordered the clerk to enter a fine of fifty dollars against the attorney. There can be no doubt about the prejudicial effect of that action of the court. The sharp remarks of the court in attempting to hurry the trial and chiding the appellant's counsel for delay, as it occurs in the record, followed by this fine, thereby bringing counsel for the appellant into a humiliating and shameful position before the jury, was extremely prejudicial. It is such error as to require a reversal of the case. [State v. Davis, 217 S. W. l. c. 91; Schmidt v. Railroad Co., 149 Mo. l. c. 283; State v. Jones, 197 S. W. l. c. 158; State v. Hyde, 234 Mo. l. c. 255; State v. Drew, 213 S. W. l. c. 107.]

The judgment is reversed and the cause remanded. Railey and Mozley, CC., concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.