STATE of Missouri, Respondent,

v.

Alonzo Virgil SELMAN, Appellant.

No. 51096.

Supreme Court of Missouri,

Division No. 2.

June 14, 1965.

Norman H. Anderson, Atty. Gen., Clyde Burch, Asst. Atty. Gen., Jefferson City, for respondent.

Patrick M. Keating, Kansas City, for appellant.

BARRETT, Commissioner.

In an information appropriately charging the offense, it was alleged that on April 4, 1964, the appellant Alonzo V. Selman with malice aforethought and intent to kill, shot at Clifford O. Dempsey, a policeman. Section 559.180. RSMo 1959, V.A.M.S.; State v. Broyles, 317 Mo. 284, 295 S.W. 550. A jury found Alonzo guilty as charged and fixed his punishment at ten years' imprisonment.

In brief the circumstances adduced by the state were that on April 4, 1964, at 3:30 a. m. uniformed officers Dempsey and Foote and their dog Silver War of the K-9 Corps were parked in the middle of the block of Campbell Street at Campbell and Harrison in Kansas City when they heard several shots in succession. They did not know it at the time but these shots, according to the appellant and his brother-in-law Lewis, were fired by Lewis at Joe Canady who when apprehended had two bullet wounds in the small of his back. In any event, immediately after hearing these shots nearby, the officers looking across a vacant lot saw a man running north on Campbell (this man turned out to be Canady) and Dempsey or Foote commanded him to halt after announcing that they were "police officers." Dempsey with his dog ran ahead of Foote in pursuit of the fleeing man and left Foote walking behind and across 17th Street. And Foote says, "At this point I observed—I looked to my left, which would have been up on Campbell, and I observed a man (the

appellant Selman) step out into the light, it appeared that he stepped off the curb, and had a revolver in his hand and was following Corporal Dempsey." Then he said, "As I watched this man aiming his revolver at Corporal Dempsey, I yelled for him to drop it, police officers. * * * I yelled it just once and at the end of this he fired one shot. * * * I heard it and saw the muzzle blast. * * * As soon as the shot went off he turned and brought the pistol back toward me. * * * As he turned onto me with the revolver I drew my service revolver and fired. * * * It was pointed at me, and after the—after I fired the first two shots, he turned (indicating) and brought the pistol around like this (indicating) onto his— twisted his left shoulder, and then brought it back around at about waist high (indicating) and continued toward me. * * * as he got closer to me, I was attempting to reload my revolver and I could hear a clicking." When Alonzo was but eight to ten feet away Sergeant Barnes arrived on the scene and fired one shot over the hood of his automobile but Alonzo continued on towards Foote with his gun in his hand and finally Foote "knocked him down with my service revolver." Dempsey returned with Canady and Canady and the appellant were taken to the city hospital. The appellant's gun was "a .22 caliber foreign made blank revolver, that has been altered * * * for firing live ammunition" and in the gun there was one spent shell and four .22 caliber cartridges with "firing pin" impressions on the cases. Selman in testifying said that it was dark and he did not know there were police officers around. He claimed that he was shooting at Canady but obviously the jury did not believe him and the briefly noted evidence supports the charge. State v. Taylor, Mo., 182 S.W. 159; State v. Golden, Mo., 40 S.W.2d 1044.

In the appellant's motion for a new trial there are but two assignments of error and since they both relate to remarks by the trial judge may be considered together. The first complaint is that after three prospective jurors had been excused assertedly because of their admitted prejudice the court "admonished the remainder of the jury panel that their prejudices should have been left at home when they reported for jury duty." It is said that this remark deprived the appellant of a fair trial and infringed his state and federally guaranteed constitutional rights. The second assignment is that in the course of the trial "the Court engaged in a conversation with one of the jurors, commenting on the evidence, in violation of Rule 26.09."

■ The first of these assignments is based on an incident occurring on page 32 of an 87 page examination on voir dire. After two prospective jurors had said "Oh, I am afraid I would be inclined to lean to the Police Department on that. In other words I don't think I could render a fair decision (on) it," the court excused them and then made this statement: "Members of the Jury, a defendant, and the State, each, in a criminal case are entitled to a fair and impartial jury. The members of the jury will take an oath to decide the case fairly and impartially and on the evidence they hear from this court room, and leave their prejudices at home. Now if there is anybody that cannot do that, raise your hands. Proceed, Counsel." Defense counsel objected "to the remarks of the Court as tending to influence the answers of the prospective jurors in this case." Aside from the lack of detailed specificity in his motion for a new trial and aside from the fact that the motion is not based upon the objection made and is not particularly enlightening as to the meaning of either, it just simply does not appear how the court's remarks could by any stretch of the imagination be construed as prejudicial to the appellant's right to a fair trial. The court's admonition is not too different from the general and cautionary instruction that may be given in any case (MAI 2.01, 53 Am.Jur. (Trial) Sec. 77, p. 76,) in any event the remark could not be construed as a comment on the evidence or as expressive of an opinion on the merits of the case and in its context was not

prejudicial to the appellant. State v. Schubkegel, Mo., 261 S.W.2d 933, 935.

The second matter arose when the state was offering in evidence exhibits, particularly "the shell casing and the bullet," to which the court had said, "I don't like the idea of passing live ammunition to this jury." At this juncture a juror inquired, "Are we allowed to ask questions?" The court said, "That depends. What question do you have?" The juror replied, "I would like to know how he (the police department's ballistics technician) knows the shells in that box came out of that gun if he didn't fire the gun. How did he get—did he take a photograph of the hammer, or whatever you call it? * * * Well, I might not have been listening, or I might be so dumb I don't know." The officer was answering "The reason I say I did not fire the gun is because I did not consider it safe, but the officer who unloaded it stated to me that—" and there was an objection "as being an invasion of the Court's province—." The court interrupted, "Yes, that is not proper. It has already been established that the live cartridges found in the State's Exhibit—1, and that the four—that the four live cartridges were found in State's Exhibit 1, and the one expended— * * * fired cartridge was taken from State's Exhibit 1. Hasn't that been the evidence?"

 The court's statement was unnecessary and probably should not have been made but in this particular instance and in the context of the trial could not possibly constitute an infringement of the defendant's right to a fair trial. As indicated by the court the fact of the shells had been established by all of the state's witnesses and in addition in testifying on direct examination the appellant said "Yes, that is my gun. Absolutely. * * * I turned around and fired. Q. How many times? A. One. I had five alive in there. That hadn't been fired." In part, the court's statement was explanatory of its ruling in response to an objection and certainly in view of the tacitly conceded fact could not be construed

as an improper comment on the evidence or as manifestly prejudicial to the appellant. State v. Sanders, 76 Mo. 35, 37; State v. Raffie, Mo.App., 60 S.W.2d 668, 671.

The appellant was heard upon his motion for a new trial (Section 546.580 RSMo 1959, V.A.M.S.) and there are no errors upon the record before the court (Criminal Rule 28.02) and since there is no merit in the assignments of error in the motion for a new trial the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.