**STATE of Missouri, Respondent,**

**v.**

**Alonzo Virgil SELMAN, Appellant.**

**No. 51096.**

Supreme Court of Missouri,
Division No. 2.

Oct. 30, 1968.

Motion for Rehearing or to Transfer to Court
En Banc Denied Dec. 2, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Charles G. Hyler, Special Asst. Atty. Gen., Farmington, for respondent.

J. Whitfield Moody, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

DAVID A. McMULLAN, Special Judge.

The defendant was convicted in the Circuit Court of Jackson County of Assault with Intent to Kill with Malice and sentenced to ten years' imprisonment. The conviction was affirmed by Division No. 2 of this Court (State v. Selman, Mo., 391 S.W.2d 193). Subsequently, on motion filed following the decision in Bosler v. Swenson, 8 Cir., 363 F.2d 154, the affirmance was set aside because, although counsel had been appointed for defendant on appeal, he filed no brief in this Court, and defendant was and now is a legally indigent person. At the time the affirmance was set aside there was pending in this Court an appeal by the defendant from a judgment overruling a motion to vacate the judgment and sentence filed under Supreme Court Rule 27.26, V.A.M.R. Both appeals have been ordered consolidated.

We consider first defendant's direct appeal.

Our prior opinion herein (391 S.W.2d 193) summarized the facts as developed in the State's evidence. We adopt and incorporate herein that statement of facts, as follows:

"In brief the circumstances adduced by the state were that on April 4, 1964, at 3:30 a. m. uniformed officers Dempsey and Foote and their dog Silver War of the K-9 Corps were parked in the middle of the block of Campbell Street at Campbell and Harrison in Kansas City when they heard several shots in succession. They did not know it at the time but these shots, according to the appellant and his brother-in-law Lewis, were fired by Lewis at Joe Canady who when apprehended had two bullet wounds in the small of his back. In any event, immediately after hearing these shots nearby, the officers looking across a vacant lot saw a man running north on Campbell (this man turned out to be Canady) and Dempsey or Foote commanded him to halt after announcing that they were 'police officers.' Dempsey with his dog ran ahead of Foote in pursuit of the fleeing man and left Foote walking behind and across 17th Street. And Foote says, 'At this point I observed—I looked to my left, which would have been up on Campbell, and I observed a man (the appellant Selman) step out into the light, it appeared that he stepped off the curb, and had a revolver in his hand and was following Corporal Dempsey.' Then he said, 'As I watched this man aiming his revolver at Corporal Dempsey, I yelled for him to drop it, police officers. * * * I yelled it just once and at the end of this he

fired one shot. * * * I heard it and saw the muzzle blast. * * * As soon as the shot went off he turned and brought the pistol back toward me. * * * As he turned onto me with the revolver I drew my service revolver and fired. * * * It was pointed at me, and after the—after I fired the first two shots, he turned (indicating) and brought the pistol around like this (indicating) onto his—twisted his left shoulder, and then brought it back around at about waist high (indicating) and continued toward me. * * * as he got closer to me, I was attempting to reload my revolver and I could hear a clicking.' When Alonzo was but eight to ten feet away Sergeant Barnes arrived on the scene and fired one shot over the hood of his automobile but Alonzo continued on towards Foote with his gun in his hand and finally Foote 'knocked him down with my service revolver.' Dempsey returned with Canady and Canady and the appellant were taken to the city hospital. The appellant's gun was 'a .22 caliber foreign made blank revolver, that has been altered * * * for firing live ammunition' and in the gun there was one spent shell and four .22 caliber cartridges with 'firing pin' impressions on the cases. Selman in testifying said that it was dark and he did not know there were police officers around. He claimed that he was shooting at Canady * * *."

We state herein, where necessary, any additional evidence required in connection with passing upon matters presented.

■ The defendant contends there was no direct evidence of his intention to shoot Officer Dempsey. It is argued that "Officer Foote's testimony that defendant Selman shot at Dempsey is a conclusion. * * * defendant could have been shooting at Canady. * * * He had no motive for shooting at Dempsey. * * * It is highly probable that he did shoot at Canady." No objection was made to the testimony of Officer Foote that defendant was "aiming his revolver at Corporal Dempsey" and "I yelled for him to drop it, police officers." * * * and defend-

ant "was still pointing it at Officer Dempsey at this time." There was ample evidence that Officer Foote was in a position to observe defendant and knew and could observe the general position of Corporal Dempsey. This was sufficient to present the question of intent to the jury. Granting the defendant had no motive to shoot Officer Dempsey, motive is not an element of crime and is merely a circumstance to be considered by the jury. State v. Taylor, 356 Mo. 1216, 205 S.W.2d 734.

■ The defendant Selman was shot by the police during the action and taken to the hospital where he remained about ten days. Police Detective Robert Cook, Jr., who arrived at the scene shortly after the occurrence and then went to the hospital where defendant was taken, testified that he asked the defendant his name and address "because none of us knew who he was". He also asked him what happened out there, and the defendant told of the trouble with Canady and how defendant pulled his pistol and started shooting at Canady. He also asked the defendant, "Why did you shoot at the police officers out at the scene?" to which the defendant replied, "Because they were shooting at me." Defendant complains that the reception of this statement in evidence was incompetent and highly prejudicial and in violation of his constitutional rights. The trial of this case began June 16, 1964, and the standards set out in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, are not applied retroactively. State v. Harris, Mo., 413 S.W. 2d 244; State v. Nolan, Mo., 423 S.W.2d 815; Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

■ Defendant cites Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265, as authority for his contention that the reception of defendant's statements was in violation of his constitutional rights. In that cause the petitioner at the time the alleged confes-

sion was obtained was under indictment, represented by an attorney, his pleas to contact his attorney were ignored, he was questioned eight hours straight, and the Court held the statement was obtained by pressure, fatigue and sympathy falsely aroused. There is nothing whatsoever in the record to indicate that the statement of defendant Selman was not voluntary or that the defendant was under such disability as to render the statement suspect or that he was pressured.

It is also argued that the statement of the defendant in this case that "the officers were firing at me" could not be true because at the time the officers had not fired at him. Such statement of defendant need not necessarily be true to be admissible.

Defendant next asserts that the Court erred in receiving evidence that appellant attempted to shoot Officer Foote. We find no merit in this point, and the cases cited by the appellant do not sustain his position. The actions of the defendant in turning upon Officer Foote and firing at him was part of the res gestae and so closely connected with the main fact (his firing at Officer Dempsey) as to constitute a part of it. Without a knowledge of defendant's conduct in that very short period of time it would be very difficult for the jury to understand what occurred. State v. Bell, 359 Mo. 785, 223 S.W.2d 469; State v. Cox, Mo., 360 S.W.2d 668.

Complaint is made that the assistant prosecuting attorney was permitted to argue that the pointing and the clicking of the gun at Officer Foote could be considered by the jury to show the intent of defendant to shoot Officer Dempsey. The statement in question was, "That is circumstantial evidence that he had the intent not only to shoot Officer Dempsey, which you must find in this crime—there is no intent to shoot Officer Foote necessary—but you can use that evidence to show intent to shoot Officer Dempsey." The defendant asserts

that it improperly told the jury that, even though his act was a harmless one, it would be circumstantial proof of an intentional and harmful act as against Officer Dempsey. The statement is somewhat ambiguous when isolated from the whole argument. The assistant prosecuting attorney was discussing the evidence with reference to the question of intent to shoot Officer Dempsey. He had pointed to the direct evidence on intent, that is the testimony of Officer Foote, who testified he saw the defendant point and fire the gun at Officer Dempsey, and then the prosecuting attorney proceeded to argue circumstances which could be considered such as the action of defendant in immediately thereafter pointing and clicking his gun at Officer Foote while advancing on Officer Foote; the action of Officer Barnes; the fact that there were found five shells in defendant's gun, one spent and four unfired, yet all struck by the same firing pin. In view of the fact that the defendant testified that he did not intend to shoot, nor did he attempt to shoot, anyone other than Joe Canady, and that he shot his gun the one time and then put it in his pocket, the argument does not appear to be inappropriate. When considered in context, the statement does not permit the interpretation the defendant has placed upon it. The defendant cites State v. Davis, 284 Mo. 695, 225 S.W. 707, and State v. Gadwood, 342 Mo. 466, 116 S.W. 2d 42, in support of his contention that this argument was reversible error, but these cases do not support his position.

Defendant contends that the trial court erred in not giving a circumstantial evidence instruction. The conviction does not rest upon circumstantial evidence alone and under such circumstances a circumstantial evidence instruction is not required. State v. Allen, Mo., 235 S.W.2d 294, 297. Furthermore, as an instruction was not requested, the court could not be convicted of error in failing to give such instruction under those circumstances. State v. Allen, supra.

We now turn to the appeal in defendant's proceeding under Supreme Court Rule 27.26.

■ The motion to vacate judgment filed under said rule alleges numerous grounds, many of which are attempts to reargue the weight of the evidence and go beyond the purpose of a motion for post-conviction relief under said rule. Said motion is not in the form now required under Rule 27.26, as amended, but an evidentiary hearing was held and defendant was represented by counsel at the hearing, and under these circumstances we have concluded to review the proceeding under Rule 27.26 even though findings such as would now be required were not made. The trial court did make a judgment entry in which he found that none of the factual allegations in the motion to vacate judgment and sentence were true, but that on the contrary they were untrue, and consequently the defendant was not entitled to relief on his motion. Under these circumstances, we are reviewing the record de novo on this appeal in connection with the Rule 27.26 proceeding, but as this court stated in State v. Richardson, Mo., 347 S.W.2d 165, 173, " * * * nevertheless the judgment should not be set aside unless clearly erroneous, and due regard must be given to the opportunity of the trial court to judge of the credibility of the witnesses."

The grounds in defendant's motion which are relied upon are summarized by defendant's counsel, as follows: "His counsel was ineffective in representing him; a systematic exculsion of Negroes from the jury, he being a Negro; drunkenness on the part of some of the jurors during the trial; and an unfriendly attitude on the part of the Court which was detrimental to his constitutional rights."

■ As indicated, the defendant complains he was deprived of effective assistance of counsel at his trial. As was stated by Judge Eager in his concurring opinion in State v. Keeble, Mo., 427 S.W.2d 404: "This (inadequacy of counsel) is becoming a rather popular line of attack upon judgments of conviction." (Parentheses ours.) It has been asserted in cases where outstanding members of the Bar render excellent services in behalf of a defendant, yet we must recognize that in some instances this line of attack has been true. We have carefully examined the entire transcript and find no merit to this contention. All of the complaints now being made in an effort to support this point are based upon failure of counsel to object to evidence or arguments of the prosecuting attorney which we have held admissible or which were not clearly erroneous, and upon counsel's failure to request an instruction on circumstantial evidence which would have been properly refused.

■ The defendant offered no evidence of a systematic exclusion of Negroes from the jury in support of that allegation in his motion. There were Negroes on the panel, and the record so shows. The fact that none were selected to serve on this jury does not tend to prove that the court in summoning prospective jurors did so improperly.

■ There is no evidence to support defendant's assertion that the jurors were drunk, but defendant testified at the evidentiary hearing on his motion with regard to this assignment, as follows: "They probably was drunk from the decision they made and the verdict. I take it from that." We find nothing in the record, and nothing was produced at the evidentiary hearing, which indicates an attitude upon the part of the trial court which was detrimental to the defendant's constitutional rights.

It is apparent that the defendant had assistance of others at his place of confinement in the drafting of his motion to vacate. Defendant himself so indicated. Other points are raised therein which we find to be wholly without merit and not proper grounds for a motion to vacate.

These are not presented by counsel for defendant in his brief on appeal.

We find no error respecting the sufficiency of the information, verdict, judgment and sentence, nor was any prejudicial error committed in the trial, and the motion to vacate filed under Supreme Court Rule 27.26 was properly overruled.

The judgment of conviction is affirmed, and the order overruling the motion is affirmed.

FINCH, Acting P. J., and McGHEE, Special Judge, concur.