STATE of Missouri, Plaintiff-Respondent,

v.

Jerry Lewis THOMAS, Defendant-Appellant.

No. 36490.

Missouri Court of Appeals, St. Louis District, Division 2.

April 27, 1976.

Richard H. Sindel, Asst. Public Defender, Clayton, Mo., for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Charles H. Howard, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., Clayton, Mo., for plaintiff-respondent.

STEWART, Judge.

A jury found defendant guilty of murder in the second degree (§ 559.020 RSMo. 1969) and fixed his punishment at fifteen years.

Defendant's principal contentions are that the trial court erred (1) in permitting the prosecutor to ask the defendant's witness if he had been convicted of juvenile delinquency; (2) in allowing a lay witness to testify that in her opinion the affray between defendant and the victim had terminated before the defendant shot the victim; and (3) in admitting dog tracking evidence without proper foundation.

Defendant does not challenge the sufficiency of the evidence. We briefly summarize the facts.

Defendant lived at 6228 Vetter with his mother, Mary Louise Jarrett, his stepfather Roosevelt Jarrett, his two younger sisters and the victim, Harvey Tenzsley, a nephew of Mrs. Jarrett. Defendant and Willie Malone, a friend, arrived at the house around 10:00 p. m. on June 25, 1973. When defendant came into the house he and his mother had some heated words. Harvey Tenzsley came out of his bedroom about that time. He and defendant had some words with respect to the use of defendant's record player. The defendant snatched the record player from the kitchen table, where Harvey had placed it, and ran to his own room. He was followed by Harvey who took the record player away from defendant. The defendant then went to the living room where Mrs. Jarrett had been ironing, grabbed the iron and ran back toward Harvey who was still in defendant's room. Mrs. Jarrett followed the defendant. She, defendant and Harvey started struggling over the iron. Harvey was holding the defendant, who was kicking. She did not see Harvey hit the defendant. Mrs. Jarrett took the iron from defendant who unintentionally kicked her. Harvey left defendant's room and went to the refrigerator in the kitchen. Mrs. Jarrett followed him into the kitchen and went to the kitchen closet to put the iron away. When she turned around the defendant was standing behind the dining room table holding a rifle. As Harvey turned around the defendant fired one shot which struck Harvey in the chest. The victim fell to the floor with a fatal gunshot wound.

Mrs. Jarrett did not hear the victim say anything just before he was killed. After the shooting the defendant left with the rifle, accompanied by Willie Malone.

The police were called and while tracking defendant's scent with a German Shepherd dog discovered a .22 caliber rifle in a building nearby. The defense witness, Malone, saw the defendant hide the rifle where it was discovered by the dog.

Willie Malone testified on behalf of defendant. In support of defendant's claim of self-defense he stated that he had seen Harvey hit the defendant across the head dur-

ing the argument over the record player; that the victim was walking towards the defendant when defendant discharged the gun; and that as Harvey approached defendant he said that if defendant didn't shoot him, he would shoot defendant.

Defendant's first contention is that the trial court erred in overruling his objection to the " . . . State's inquiry of defense witness Willie Malone, whether he had a juvenile record and whether he had been adjudged a delinquent by the juvenile court."

Willie Malone, who was 18 years of age at the time of the trial, was called as a witness on behalf of defendant. During cross-examination the prosecutor asked if he had ever been convicted of a crime. The witness responded in the negative.

Counsel then approached the bench and in the colloquy that followed the State announced its intention to attempt to show a finding of delinquency in the Juvenile Court, to which defendant objected; the court announced that he would overrule the objection. The court based his ruling on *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In the discussion Mr. Fahrenkrog, the prosecutor, stated that he did not know if the witness had a record. The prosecutor then asked the following questions over defendant's objections:

"Q. Mr. Malone, I think you said you have never been convicted of a crime, is that correct?

A. Yes.

Q. Have you been known to the juvenile authorities?

A. Yes.

Q. Was there a finding of delinquency entered against you?

A. Nope.

Q. Never by the juvenile authorities?

A. No."

The resolution of this issue is governed by § 211.271(3) RSMo. 1969 which states:

"After a child is taken into custody as provided in section 211.131, all admissions, confessions, and statements by the child to the juvenile officer and juvenile court personnel and all evidence given in causes under this chapter, as well as all reports and records of the juvenile court, are not lawful or proper evidence against the child and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under this chapter."

As conceded by the State, *Davis v. Alaska, supra,* is not applicable here. *Davis* holds that under the circumstances in that case the defendant's Sixth Amendment right of confrontation is paramount to the policies of the States which enact legislation such as § 211.271. Thus the defendant in Davis was permitted to show the bias of a State's witness by introducing evidence that the witness was on probation as a juvenile delinquent at the time he identified defendant as a burglar. The State has no such right. *Davis* would appear to be limited in its application. The statute invoked here, § 211.271, and its predecessors have been held to prohibit the impeachment of witnesses by reference to their past juvenile history. *State v. Williams,* 473 S.W.2d 388, 389[1] (Mo.1971).

It is clear from *State v. Pitchford,* 324 S.W.2d 684, 689[8] (Mo.1959) that the statutory ban applies not only to impeachment by means of the juvenile record itself, but also applies to any cross-examination on the subject of prior juvenile "convictions."

■ The incredulity expressed in the question, "Never by the juvenile authorities?" could tend only to indicate that the prior negative answer was not believable. This interrogation was conducted by a prosecutor who admitted that he had no knowledge that the witness had a juvenile record. The interrogation was not only improper under the statute but was conducted in bad faith. See *State v. Thomas,* 535 S.W.2d 138, (Mo.App.1976). We can only conclude that it was prejudicial error.

While the case must be reversed for the above reason we shall discuss other matters which may arise in a retrial of this case.

■ Defendant's second contention is that the trial court erred in overruling his

objection to the prosecutor's question of Mrs. Jarrett as to whether in her own mind she thought the struggle was over after the victim left defendant's room and went into the kitchen. She testified that immediately prior to the killing there had been a struggle between the defendant and the victim; that she had assisted the victim in taking an iron away from defendant; and that Harvey Tenzsley had gone into the kitchen, after which defendant came toward Harvey with the rifle. She was then asked:

> "Q. So at the time the iron was taken away from Jerry [defendant], you thought the struggle was over at that time?"

Defense counsel objected to the question because it called for a conclusion and because the witness' mental state was irrelevant. The objections were overruled and the question was asked again as follows:

> "Q. So in your own mind at that time, Mrs. Jarrett, did you feel that the struggle was over?
>
> A. Yes, I did."

The questions called for an opinion or conclusion on the part of a lay witness. The State concedes that as a general rule a lay witness may not testify as to his opinions or conclusions, but must state facts. 32 C.J.S. Evidence, § 438, p. 50. *Freeman Contracting Company v. Lefferdink*, 419 S.W.2d 266, 277[24] (Mo.App.1967). However, the State proposes that the present case comes within an exception to that rule.

*Brown v. Kroger Co.*, 358 S.W.2d 429, 433[4] (Mo.App.1962) is cited as establishing such an exception " . . . when it is impossible or extremely difficult for a witness to convey an accurate and actual meaning . . . " if he is restricted to stating facts. See also *State v. Davis*, 284 Mo. 695, 225 S.W. 707, 708[1] (1920) which states that lay opinion evidence should be admissible "where the conclusion of the witness is based upon facts which are incapable of being accurately described . . . " And *Scanlon v. Kansas City*, 325 Mo. 125, 28 S.W.2d 84, 95[15–16] (Mo. banc 1930) states that a lay opinion is admissible when " . . the nature of the subject-matter is such that it cannot be reproduced or detailed to the jury . . . "

In the instant case the witness had already testified as to the conduct of the two parties, what they had said to each other, and their relative physical positions at the time of the killing. These and similar facts observed by her must have been the basis for her conclusion. We do not feel that such facts are "impossible or extremely difficult" to relate, nor "incapable of being accurately described," nor that they "cannot be reproduced or detailed to the jury." Rather we feel that this case is controlled by the general rule as given in *State v. Davis, supra*, 225 S.W.2d, at 708–9 as follows:

> "But if the witness can clearly and correctly give the facts upon which a conclusion may be based, then it is for the jury to draw the conclusion."

Finally, the State argues that the admission or exclusion of opinion testimony is largely within the discretion of the trial court. *Anderson v. Robertson*, 402 S.W.2d 589, 594[8] (Mo.App.1966). Such decisions are reviewable only for the abuse of discretion. *State v. Edmonds*, 468 S.W.2d 685 (Mo.App.1971).

The primary issue before the jury in the case at bar is whether the defendant acted in self-defense. By Instruction 10 the jury was to determine whether the defendant had reasonable cause to believe he was in immediate danger and that it was necessary for him to act to protect himself. They were also to consider any threats or assaults by the victim in order to determine who was the aggressor. The State's evidence showed a struggle between the defendant and victim immediately prior to the killing. The defendant's evidence was to the effect that at the end of the struggle the victim punched defendant in the head; that the victim threatened defendant and was walking toward him at the time of the killing. The determination of whether the struggle had continued till the time of the killing, or whether it had ended, was crucial to defendant's claim of self-defense. Mrs. Jar-

rett's conclusion that the struggle had ended invaded the province of the jury to the prejudice of defendant's claim of self-defense. To allow such a conclusion or opinion into evidence under the circumstances of this case was reversible error.

Defendant next contends that the trial court erred in overruling his objection to testimony regarding the locating of the murder weapon by means of a German Shepherd dog.

■ Evidence of tracking by a dog is admissible only upon a showing " . . . that the dog is of pure breed; that it has been trained to trail humans, and has the capacity to do so; and that it is qualified by experience to follow a human trail." *State v. Fields*, 434 S.W.2d 507, 516 (Mo.1968).

■ The State concedes that the proper foundation was not set forth in the present case, but argues that the admission was harmless error. We agree.

The dog sniffed an article of clothing, presumably defendant's, at the scene of the crime. The dog then, with his nose to the ground, led the officer to a .22 caliber rifle in the basement of a nearby residence.

This evidence was merely cumulative of other evidence connecting the rifle to the defendant. Mrs. Jarrett identified the gun as being similar to the gun used by defendant, as did Mr. Jarrett and Mr. Malone. There was no question of identity of the assailant. The defendant's witness, Mr. Malone, testified that he saw defendant shoot the victim and that he saw defendant hide the rifle where it was found.

The only issue before the jury in the present case is whether the defendant acted in self-defense. The tracking evidence has no effect on that issue; its admission was harmless error.

Other matters raised by defendant are not likely to arise on the retrial of this case, it will therefore not be necessary to discuss them.

For the reasons herein the case is reversed and remanded for a new trial.

CLEMENS, P. J., and KELLY, J., concur.