STATE of Missouri,
Plaintiff-Respondent,

v.

James Harvey DICKERSON,
Defendant-Appellant.

No. 41003.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 25, 1979.

Edward V. Ward, Deeba, DeStefano, Sauter & Herd, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

Appellant was tried for burglary and stealing and found guilty by a jury of burglary in the second degree. § 560.070, RSMo 1969. As a second offender, he was sentenced by the court to seven years in the custody of the Department of Corrections. § 556.280, RSMo 1969. He appeals.

Appellant alleges the trial court erred in: (1) failing to strike a venireman for cause when he indicated that he believed that a police officer had a better memory of events than a layman, thus forcing appellant to use a peremptory challenge; (2) admitting a police sergeant's expert testimony as to a possible means of entry into the building by standing on an automobile; (3) allowing a fingerprint card containing appellant's fingerprints to be shown to the jury.

The judgment is affirmed.

At 9:45 p. m. on March 1, 1978, the St. Louis Police Department gave an all-points bulletin for prowlers attempting entry in the rear, or east side, of the Cabanne Branch Library. Within a minute Patrolman Charles Magditsch arrived at the rear of the building and shone a spotlight at the one window in the rear where the blinds were raised. He saw a man rise up and look out of the window for five or six seconds and then disappear. A minute or two later he heard a scraping noise at the north side of the building, and he went over to investigate. At that time Sergeant James Payne, who arrived at the library a few minutes after Magditsch, was standing at the northwest corner of the building. Both men saw appellant falling in midair, and later Magditsch observed that the falling man was the same person whom Magditsch had seen peering from the window. Appellant landed a few feet from the side of the building. He got up and tried to run, but he had broken his leg and was unable to do so. Payne then arrested him. While appellant was being arrested, a woman ap-

proached Officer Magditsch and stated that "they had been in the building and they had a ladder." Upon entering the building, police discovered that a television set had been taken from an office in the building. The television set was never recovered. Appellant's trial and conviction of second degree burglary followed.

For reversal, appellant first claims he was denied the right to select a fair and impartial jury because of the failure of the court to strike venireman David C. Bubash for cause. During voir dire, defense counsel questioned the veniremen concerning their attitudes toward police officers as witnesses and this colloquy ensued:

> MR. WARD: Let me ask the entire panel if there is anybody on the panel that believes that police officers would have a greater tendency to tell the truth on the stand than, say, would a lay witness? Does anybody feel that way? Would anybody feel that a police officer because of his training might have a greater memory or better memory than, say, a lay person that's on the stand?
>
> VENIERMAN (sic) BUBASH: I think he would.
>
> MR. WARD: You think he would, Mr. Bubash?
>
> VENIERMAN (sic) BUBASH: Yes.
>
> MR. WARD: And because of that, if a police officer got on that stand and testified as to something he recalled and it clashed with, say, what the defense put on, then you would tend to give that police officer more credibility than you would another witness?
>
> VENIERMAN (sic) BUBASH: Somewhat, yes.
>
> MR. WARD: All right. So your tendency, then would be to lean toward the story the police officer believed than the story that the defense might tell?
>
> VENIERMAN (sic) BUBASH: Yes.
>
> MR. WARD: Is that correct? So, basically, then, would you be able to give both parties a fair trial despite that?
>
> VENIERMAN (sic) BUBASH: I think so.
>
> MR. WARD: Even though you have a tendency to believe the police officer more than you would a lay witness?
>
> VENIERMAN (sic) BUBASH: Well, I'm sure there has been bad policemen, but I mean their memory is usually a little better.

Appellant then moved to strike Bubash for cause. The court refused, and appellant later challenged Bubash peremptorily.

██ Appellant had a right to be judged by fair and impartial jurors who could give each person's testimony the weight to which it was entitled. A venireman whose statements indicate to the court that he cannot do this should be discharged for cause. *State v. Hicks*, 530 S.W.2d 396 (Mo.App. 1975). And, appellant was entitled to a full panel of qualified jurors before being required to make his peremptory challenges. *State v. Cuckovich*, 485 S.W.2d 16 (Mo.banc 1972).

██ However, a trial court has wide discretion in deciding the qualification of jurors and its decision should not be disturbed unless there is a clear abuse of discretion. *State v. Harris*, 425 S.W.2d 148, 155 (Mo. 1968).

After the initial interrogation of Bubash, counsel conferred at the bench out of the hearing of the jury. The judge denied the challenge because Bubash said he could give a fair trial and because Bubash's opinion that a police officer is trained to have a better memory than a lay person would not deny the defendant a fair trial. The judge allowed defense counsel to pursue the matter further. After asking several more questions of Bubash without revealing any prejudice counsel did not renew his challenge.

In *State v. Cuckovich, supra,* the court upheld the trial court's refusal to strike for cause two veniremen who stated that they would give more weight to the testimony of a police officer than to that of other witnesses. See also, *State v. Pride*, 567 S.W.2d 426 (Mo.App.1978).

██ The testimony of a venireman is to be viewed in its entirety in determining whether prejudice or bias exists which will

prevent him from being an impartial juror and hence deny a defendant a fair trial. A thorough discussion of the general principles relating to the disqualification of jurors who have formed an "opinion" in a cause appears in *State v. Richards*, 536 S.W.2d 779 (Mo.App.1976). Even when a juror has formed an opinion in a case, a challenge may be denied if "such opinion is founded only on rumor and newspaper reports, and not such as to prejudice or bias the mind of the juror." § 546.150, RSMo 1978.

■ Bubash had not formed an opinion. He merely expressed a belief that a police officer has a better memory than a lay person. Jurors in a criminal case are instructed that in evaluating a witness' testimony they may take into consideration the witness' "ability and opportunity to observe and remember any matter about which he testifies . . . ." MAI–CR 2.01. The trial judge could observe Bubash's demeanor and evaluate the possibility of prejudice or bias. All doubts should be resolved in favor of the trial court's decision. *State v. Richards, supra.* Bubash said he could give both parties a fair trial. There was no abuse of discretion by the trial court in denying the challenge for cause.

The cases cited by appellant in support of his contention that he was denied an unbiased jury are distinguishable. In *State v. Spidle*, 413 S.W.2d 509 (Mo.1967), the challenged juror had read a newspaper account of the crime and, as a result, assumed the defendant was guilty. Bubash had no opinion as to the guilt of appellant. In *Hernandez v. State*, 563 S.W.2d 947 (Tex.Cr.App. 1978) the juror's voir dire examination revealed her belief that a police officer would always tell the truth. Bubash did not say he believed a police officer would always tell the truth in court. Neither of appellant's cases stands for the proposition that a venireman's belief that a policeman might have a better memory than a lay witness requires his disqualification as a juror.

Appellant asserts in his second point relied on that the trial court erred in permitting Sergeant Payne to testify as to "how someone might possibility get into the building," claiming the testimony was prejudicial opinion evidence without proper foundation.

On redirect examination, Sergeant Payne was asked by Mr. Ankney, attorney for the state:

Q: Now, is there a way to get in one of these windows on the main floor without a ladder? Did you discover a way to get in these windows without a ladder?

A: Yes, sir.

Q: And how was that? How would that be?

A: Stepping on the fender of an automobile and up to the—

MR. WARD: I object as a conclusion. No foundation, your Honor.

THE COURT: Well, I'll oberrule (sic) the objection.

A: From the hood of the automobile.

MR. WARD: Did you overrule that?

MR. ANKNEY: Yes.

Q: (By Mr. Ankney) How can you get to the window without the ladder?

A: You can part (sic) a car by that one part of the building, that's built out, and the top of it is even with the main floor window.

Appellant also claims Sergeant Payne's testimony was evidence of an experiment for which no proper foundation was laid. The testimony contained no reference to an experiment and this issue need not be discussed.

No objection was raised at the trial or in appellant's motion for a new trial as to the qualification of Sergeant Payne as an expert. The only question presented for decision is the possible lack of foundation for his testimony.

■ An expert may base a competent opinion on matters within his own personal knowledge or observation, or upon competent evidence in the case, or both. *Summers v. Tavern Rock Sand Co.*, 315 S.W.2d 201 (Mo.1958); *Oesterle v. Kroger Grocery & Baking Co.*, 346 Mo. 321, 141 S.W.2d 780 (1940).

■ The foundation for Sergeant Payne's testimony was his personal observation of the library premises, the height of the windows and the height of an automobile. His knowledge obtained at the scene was sufficient foundation for the testimony as to possible access to the building from an automobile.

The facts of the cases cited by appellant [*State v. Gibson*, 502 S.W.2d 310 (Mo.1973); *State v. Gish*, 371 S.W.2d 654 (Mo.App. 1963); *State v. Thomas*, 536 S.W.2d 529 (Mo.App.1975)] differ materially from the facts being considered here and lend little support to appellant's contentions. His second point is ruled against appellant.

■ Appellant finally charges it was error to show a police file fingerprint card to the jury because the card was evidence of prior crimes.

Police Officer John Salamone, called as a witness by appellant, testified he compared the fingerprints taken by police at the library with those on the card, and could not make a comparison. On cross-examination the state questioned Salamone further concerning the police file card and asked to see it. Appellant objected twice to questions about the fingerprint card on the ground that a reference to the card was evidence of prior crimes. He raised the same claim of error in his motion for a new trial and added that it was error to show the card to the jury.

The record does not support appellant's assertion that the fingerprint card was shown to the jury. This erroneous statement of fact first appeared in appellant's motion for a new trial. It is not borne out by the record. Therefore, it must be disregarded on appeal. *State v. Tucker*, 362 S.W.2d 509 (Mo.banc 1962).

■ Further, there was no reference to or testimony about prior crimes in the record. The state was permitted to inquire on cross-examination about the fingerprint card to rebut the inference created by Salamone's testimony that the fingerprints in the library could not have been those of appellant. Such questioning may be al-

lowed if otherwise appellant could obtain an unfair advantage by bringing in selective portions of evidence of a transaction and objecting to the admission of those parts unfavorable to him. *State v. Dancy*, 541 S.W.2d 35, 37 (Mo.App.1976). There is no merit in appellant's third point relied on.

The judgment is affirmed.

REINHARD, P. J., and GUNN and CRIST, JJ., concur.